## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CoSTAR REALTY INFORMATION, INC.,           *
a Delaware Corporation,                     *
2 Bethesda Metro Center, 10th Floor         *
Bethesda, Maryland  20814;                  *
                                            *
and                                         *
                                            *
NATIONAL RESEARCH BUREAU, INC.;             *
a Delaware Corporation,                     *
a wholly owned subsidiary of                *
CoStar Realty Information Inc.              *
2 Bethesda Metro Center, 10th Floor         *
Bethesda, Maryland  20814;                  *
                                            *
     Plaintiffs,    *
                                            *
v.                                          *     Case No.:
                                            *
CENTERS & MALLS, LLC,                       *
a Delaware Corporation,                     *
736 N. Western Avenue, Suite 246            *
Lake Forest, Illinois 60045;                *
                                            *
and                                         *
                                            *
ROBERT GALVIN, an Individual                *
427 Carroll Avenue                          *
Mamaroneck, NY 10543;                       *
                                            *
and                                         *
                                            *
GUY HAYS, an Individual;                    *
196 New Haven Avenue, #106                  *
Derby, CT 06418-2145                        *
                                            *
     Defendants.    *
* * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

Plaintiffs  CoSTAR  REALTY  INFORMATION,  INC.,  a  Delaware  Corporation,

(referenced herein as "CoStar") and NATIONAL RESEARCH BUREAU, INC., a Delaware

Corporation, (referenced herein as "NRB") for their Complaint against Defendants Centers & Malls, LLC ("Centers & Malls"), Bob Galvin ("Galvin"), Guy Hays ("Hayes"), allege as follows:

## PARTIES

1.      CoStar Realty Information, Inc. ("CoStar") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, MD 20814-5388.

2.      National Research Bureau, Inc. ("NRB"), formerly known as NRB Acquisition Corp. until a name change filing on January 26, 2005, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, MD 20814-5388.  CoStar is and has been the owner of 100% of the authorized stock of NRB since NRB was formed on or about January 20, 2005.

3       Centers & Malls, LLC ("Centers & Malls") is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business listed as 736 N. Western Avenue, Suite 246, Lake Forest, Illinois 60045.

4.      Defendant Robert Galvin ("Galvin") is a New York domiciliary residing at 427 Carroll Avenue, Mamaroneck, New York 10543.

5.      Defendant Guy Hays ("Hays") is a Connecticut domiciliary residing at 196 New Haven Avenue, #106, Derby, Connecticut 06418-2145.

## JURISDICTION AND VENUE

6.      This Court has federal subject matter jurisdiction over Plaintiffs' claims for copyright infringement and related claims pursuant to 17 U.S.C. §501 *et seq.*, under the Lanham Act, 15 U.S.C. §1125(a), under 18 U.S.C. §1030 and under 28 U.S.C. §1331.

7.     This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of the State of Maryland pursuant to 28 U.S.C. §1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.     This action also invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. §1332 in that it is a controversy between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Personal jurisdiction over Centers & Malls is proper in this state because, upon information and belief, Centers & Malls: a) regularly transacts business within the State of Maryland; b) contracts to supply services with customers located within the State of Maryland; c) knowingly and/or intentionally caused tortious injury to Plaintiffs in the State of Maryland by acts outside the state while regularly soliciting business and or engaging in other persistent conduct within the State of Maryland.

10.     Personal jurisdiction over Galvin and Hays is proper in this state because Galvin and Hays have, by written contract, consented to the jurisdiction of this Court and committed the tortious and other actionable acts alleged herein with foreseeable consequences in this State. *See* Galvin Terms and Conditions of Employment, attached hereto as Exhibit 1, Section 4.4; *see also* Hays Terms and Conditions of Employment, attached hereto as Exhibit 2, Section 4.4.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## BACKGROUND

12.     Centers & Malls markets and sells or licenses an online database which contains information about malls and shopping centers located in the United States and Canada.  Access

3

to the Centers & Malls database is given to customers who purchase a membership. The Centers & Malls website describes its database as "the premier data resource for the retail real estate industry."

13.     Garrett Van Siclen is the founder and an owner of Centers & Malls.

14.     Robert Galvin is currently employed as Centers & Malls' Vice President of Sales and Strategic Partnerships. He was formerly a CoStar sales employee.

15.     Guy Hays is currently employed as Centers & Malls' Director of Client Development. He was formerly a CoStar sales employee.

16.     CoStar is a leading national commercial real estate information services provider. At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop the most comprehensive commercial real estate information service available. CoStar currently employs hundreds of trained research professionals who, along with a field research force utilizing specially equipped field research vehicles, canvass the country gathering commercial real estate information for integration into CoStar's services. CoStar's researchers collect and analyze commercial real estate information through millions of phone calls, e-mails, Internet updates and faxes each year, in addition to field inspections, public records review, news monitoring and direct mail. CoStar's field researchers physically inspect, photograph and verify existing information about commercial properties. CoStar employs approximately 550 people in Maryland alone, where it has centralized research centers in Columbia and Bethesda, Maryland.

17.     The information and photographs in CoStar's database services are not part of a repository of information generally available for free. CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage

lenders, investors, owners, property managers, security analyists, REIT (real estate investment trust) professionals and appraisers/mortgage underwriters. CoStar's information licenses, among other things, enable its licensees to find available tenant space for themselves or their customers , match buyers to properties for sale, find tenants, research brokers, locate market-related information, and value commercial real estate sales transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs. CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

18.    With the exception of a very limited amount of its information services that CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users ("Authorized Users"). Interested members of the general public can become authorized users either by (a) registering and entering into an online agreement for access and use, or (b) entering into a written license agreement and subscribing to one or more of CoStar's information services.

19.    Access to CoStar's subscription information services and their associated databases is limited to those Authorized Users who gain authorization pursuant to written license agreements that limit their access and use of CoStar's databases to specific numbers of designated, licensed users and specific licensed sites.

20.    On January 20, 2005, NRB was formed by CoStar in connection with its purchase from Claritas Inc. of all of the assets, properties and rights of the division of Claritas, Inc., known

as National Research Bureau.   National Research Bureau, while owned by Claritas, had developed, copyrighted and then licensed (on a limited, non-exclusive basis) to its customers an extensive directory and database (in paper and searchable CD-ROM formats) which contained information about retail shopping center properties throughout the United States.  This directory and database was known as the Shopping Center Directory, and was referred to that way in annual copyright filings from 2002 through 2006.  CoStar formed NRB to acquire the assets, properties and rights of National Research Bureau and to then hold those assets, properties and rights for the exclusive use and benefit of CoStar as part of CoStar's offerings of real estate information services for non-exclusive licensing to the public.  NRB has given to CoStar the exclusive license for use of all copyrights in the Shopping Center Directory, and all amended and derivative works.  This acquisition and license have enabled CoStar to increase its presence in the retail real estate sector.  In 2006, CoStar phased out the NRB product line as a separately marketed product while incorporating NRB's products into CoStar's own offerings.  CoStar expended vast amounts of time, resources, and money in completing this acquisition, so that it could obtain the exclusive proprietary rights to the NRB database.  CoStar and NRB continue to expend resources to update the database (referenced hereinafter as the "CoStar/NRB database") which is incorporated in products that are licensed (on a limited, non-exclusive basis) to CoStar subscribers. The data, photographs and other information that constitute the CoStar/NRB database are in part publicly available information, and in part proprietary works created by CoStar/NRB, which has been prepared by use of substantial and prolonged efforts of market research, verification of data, and unique arrangements of the data into searchable and organized formats for use by the CoStar/NRB licensees.

## EVENTS GIVING RISE TO THE LAWSUIT

### The NRB Database

21.     To detect unauthorized use of its products, NRB/CoStar inserts within its database certain "seed listings," which contain fictitious information that could not be duplicated by third-party research, such that these "seed listings" would only appear in a competitor's database if the NRB database had been misappropriated.

22.     After NRB acquired the National Research Bureau database and related rights in January 2005, NRB and CoStar modified some of the seed listings in the NRB database that had previously been used by National Research Bureau.

### Galvin and Hays

23.     Galvin and Hays were employees of National Research Bureau, a division of Claritas, Inc., prior to NRB's acquisition of National Research Bureau for the benefit of CoStar. Galvin and Hays became employees of CoStar upon the January 2005 acquisition of National Research Bureau.

24.     As employees of CoStar, Galvin and Hays had access to and knowledge of the NRB database.

25.     Upon information and belief, during their time as National Research Bureau employees, Galvin and Hays became acquainted with Van Siclen.

26.     On January 25 and January 24, 2005, respectively, both Galvin and Hays executed agreements with CoStar titled "Terms and Conditions of Employment." ("The Agreements").

27.     Section 2.1 of The Agreements obligated Galvin and Hays to a duty of confidentiality.  Under, Section 2.1(b) of The Agreements, Galvin and Hays agreed not to

"disclose or divulge any confidential information to any person, entity, firm, or company. . ." Under Section 2.1(e) of The Agreements, Galvin and Hays acknowledged "that in the event of a breach of this Section (Duty of Confidentiality) by Employee, the Company may suffer irreparable harm and will be entitled to injunctive relief as well as all other remedies available at law or in equity."

28.     Section 2.5 of The Agreements obligated Galvin and Hays to a duty of non-competition.  Under Section 2.5(b) of The Agreements, Galvin and Hays acknowledged that "engaging in any business which is directly or indirectly competitive with the Company will cause it great and irreparable harm."  Under Section 2.5(c) of The Agreements, Galvin and Hays agreed that for a period of one year after the termination of their employment with CoStar, they would not "directly or indirectly, be employed by, own, manage, operate, control, participate in, or be associated in any manner with the ownership, management, operation or control of any company or business engaged in the provision of commercial real estate information or software . . .".

29.     Under Section 4.4 of The Agreements, Galvin and Hays acknowledged that The Agreements would be governed by the laws of Maryland, and that any proceeding arising out of a dispute over The Agreements would be brought in either the Circuit Court for Montgomery County, Maryland, or the United States District Court for the District of Maryland.

30.     Galvin's employment with CoStar was terminated on June 21, 2006.  Hays' employment with CoStar was terminated on July 5, 2006.

### Centers & Malls

31.     Centers & Malls was founded by Van Siclen.  It was incorporated in Delaware on May 12, 2006.  It filed for limited liability status in Illinois on June 2, 2006.

8

32.     According to Centers & Malls' website, at www.centersandmalls.com/about-us.shtml, the company "was founded to serve the expanding needs of professionals and companies in the United States, Canada, and worldwide." The website further claims that its database offers "the premier database for the retail real estate industry." The website also claims to have 15,000 field researchers who provide on-the-ground intelligence and update its extensive database of photographs yearly.

33.     The Centers & Malls website states that the company's database has listings for 26,000 retail hopping centers throughout the United States and Canada. *See* http://www.centersandmalls.com/see-inside.shtml

34.     At some point in 2006 Galvin and Hays began working for Centers & Malls. Galvin is currently Centers & Malls' Vice President for Sales & Strategic Partnerships. Hays is currently Centers & Malls' Director of Client Development.

### Centers & Malls' Unlawful Acquisition and Use of the NRB Database

35.     In October 2006, CoStar employee Michael Griffin ("Griffin") came across a Centers & Malls promotional booth at a convention of the International Conference of Shopping Centers, at which Centers & Malls personnel presented the company as conducting a business that was licensing for fees a database of information about shopping centers throughout the United States.

36.     Griffin became suspicious of Centers & Malls because he had never heard of the company before, and because its promotional materials boasted that its database contained over 20,000 listings of shopping center and malls. A database of such size, if lawfully developed, would normally require a substantial amount of time, effort and investment to create, yet it

seemed that Centers & Malls had appeared almost overnight with an extensive database of shopping center properties, including detailed information on each.

37.     Griffin became more suspicious when he learned that Van Siclen, whom he knew from a company called Trade Dimensions, and when he later learned that Hays and Galvin, whom he know as former CoStar coworkers, were working for Centers & Malls.

38.     At Griffin's suggestion, CoStar investigated Centers & Malls, and subscribed to its database.  In the course of subscribing to the database, CoStar investigators corresponded with Van Siclen, Galvin, and Hays.

39.     A review of Centers & Malls' database revealed that Centers & Malls was listing several properties that contained seed listings that had been inserted by CoStar/NRB between August 2005 and December 2005, in the proprietary CoStar/NRB database.

40.     Specifically, the names and addresses for the owner/developer information and/or management company information of several properties contained within the CoStar/NRB database were actually fictitious "seed listings."   In fact, the name for the owner/developer and/or management company used on these "seed listings" was the name of a CoStar/NRB employee.  Centers & Malls' database contains at least six property listings with this fictitious information.

41.     The presence of these seed listings in the Centers & Malls database is conclusive evidence that CoStar/NRB database data was inserted into the Centers & Malls database.

42.     In addition to the above, Hays provided CoStar's investigator with a "Centers & Malls License Agreement Subscription Form" as part of the process of obtaining access to the Centers & Malls database.  This form was forwarded to CoStar's investigator as a Microsoft Word document.  CoStar inspected this form, and in particular its "metadata."  Metadata is data

about data, and in the case of Microsoft Word, certain files contain data about their original author, date and time of creation, and other attributes.  While inspecting the metadata associated with the form, CoStar discovered that the form had been authored by Suzanne Park, CoStar's Art Director and a longtime employee.  Thus, even the subscription order forms that Centers & Malls sends to prospective customers have been unlawfully taken from CoStar.  Further, CoStar's investigators have compared data available through subscription to Centers & Malls website with the CoStar/NRB database, and have found identical spacing, punctuation, and presentation appearance of data in a very high percentage of the sampled and compared property entries.

43.     Neither CoStar nor NRB has ever licensed to Centers & Malls, or given permission for use by Centers & Malls, the CoStar/NRB database.

44.     Centers & Malls is directly competing with CoStar/NRB for customers seeking shopping center real estate information.

45.     Centers & Mall is licensing for fees to its customers a database of real estate information on shopping centers that has been prepared with the unauthorized use of the CoStar/NRB database.

**COUNT I**
**COPYRIGHT INFRINGEMENT BY DEFENDANTS**
**CENTERS & MALLS, GALVIN, & HAYS**

46.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 45 of the Complaint.

47.     NRB, first as a subsidiary or division of Claritas, then later as a subsidiary of CoStar, has consistently copyrighted its database of shopping center information since at least 2002.  The copyright registration of the "2005 Shopping Center Directory" was submitted by NRB on January 24, 2005.  The copyright of the "2006 Shopping Center Directory" was

submitted by NRB on February 23, 2006. CoStar is a beneficial owner and exclusive licensee of these rights. The Shopping Center Directory, each version of it, is an original, creative work and compilation, including data compiled from many sources, verified and organized into searchable and multiple use formats, along with proprietary photographs of properties taken by or for CoStar/NRB.

48.     In January 2005, NRB, as a subsidiary of CoStar, became the owner of all rights to the Shopping Center Directory database, holding those rights for the exclusive use and benefit of CoStar.  NRB has given to CoStar the exclusive license for use of all copyrights in the Shopping Center Directory, and all amended and derivative works.  CoStar and NRB have subsequently revised and updated the database, along with the above-referenced copyright registration filed on February 23, 2006.

49.     Centers & Malls, Galvin, and Hays have infringed, directly, vicariously, or contributorily, the copyrights in the CoStar/NRB database by obtaining and/or facilitating and/or causing the publication and distribution for profit by Centers and Malls of the listings contained in the CoStar/NRB database without authorization or consent.  Upon information and belief, Galvin and Hays obtained the CoStar/NRB database without permission or authorization, gave it to Centers & Malls, and facilitated the unauthorized and illegal use and publication to the public of the CoStar/NRB database by Centers & Malls.  As such, Galvin and Hays have knowingly and in bad faith, vicariously and/or contributorily infringed the copyright of Plaintiffs.  The insertion of the CoStar/NRB database into Centers & Malls products and distribution of that to the public for profit is direct copyright infringement by Centers & Malls, and has been done by Centers & Malls knowingly and in bad faith.  All of these acts by Centers & Malls, Galvin and Hays were done with their knowledge that the Shopping Center Directory was the copyrighted and

proprietary material of CoStar and NRB, and that the Defendants did not have license, consent or authorization to take, use, publish, distribute and profit from the Plaintiffs' proprietary and copyrighted work.

50.    Defendants' conduct has been willful within the meaning of the Copyright Act. At a minimum, Defendants acted with willful blindness to and in reckless disregard of CoStar's/NRB's registered copyrights.

51.    As a result of their wrongful conduct, Defendants are liable to Plaintiffs for copyright infringement.  17 U.S.C. §501.  Plaintiffs have suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill. Plaintiffs are entitled to recover damages, which include losses of customers and revenue and any and all profits Defendants have made as a result of their wrongful conduct.  17 U.S.C. §504. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. §504(c).

52.    In addition, because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

53.    Plaintiffs are also entitled to injunctive relief pursuant to 17 U.S.C. §502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. §503.  Plaintiffs have no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the CoStar/NRB copyrights are unique and valuable property which have no readily determinable market value; b) Defendants' infringement harms Plaintiffs' business reputation and goodwill such that Plaintiffs could not be made whole by any monetary award; and c) Defendants' wrongful conduct, and the resulting damage to Plaintiffs, is continuing.  Plaintiffs are also entitled to recover its attorneys' fees and costs of suit.  17 U.S.C. §505.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar/NRB;

2) Enter an Order impounding any and all of CoStar/NRB's copyrighted materials currently in the possession of Defendants;

3) Award Plaintiffs monetary damages for all of their losses and all of the profits made by Defendants as a result of their wrongful conduct, in amounts to be proven, but expected to exceed $500,000;

4) Award Plaintiffs exemplary damages for the infringement done willfully and in bad faith;

5) Award Plaintiffs statutory damages for the willful nature of Defendants' copyright infringement;

6) Award Plaintiffs the attorneys' fees and costs of this lawsuit;

7) Award Plaintiffs such other relief as justice requires.

## COUNT II
## BREACH OF CONTRACT (SECTION 2.1 OF THE AGREEMENTS) BY DEFENDANTS GALVIN AND HAYS

54.    CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 53 of the Complaint.

55.    As part of the terms and conditions of their employment with CoStar, Galvin and Hays entered into agreements titled "Terms and Conditions of Employment" ("The Agreements") with CoStar in January of 2005.

56.    Hays executed his agreement with CoStar on January 24, 2005.  Galvin executed his agreement with CoStar on January 25, 2005.

14

57.     Under Section 2.1(b) of The Agreements, both Galvin and Hays promised not to "disclose or divulge any Confidential Information to any person, entity, firm, or company . . . ."

58.     Upon information and belief, Galvin and Hays breached Section 2.1(b) of The Agreements by disclosing confidential information regarding the CoStar/NRB database to their current employer Centers & Malls.

59.     Such breach was intentional, willful, wanton, and in direct and knowing contravention of The Agreements.

60.     CoStar suffered damages as a result of Galvin and Hays' breach of The Agreements.  Galvin and Hays' conduct has harmed and will continue to harm CoStar.  As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained.  CoStar's remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays.  Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

1)     Grant a preliminary and permanent injunction preventing Galvin and Hays from violating the confidentiality provisions of their employment agreements with CoStar;

2)     Enter an Order impounding any and all of CoStar's confidential information currently in the possession of Galvin and Hays;

3)     Award monetary damages in amounts to be proven, but expected to exceed $75,000, plus interest and reasonable attorneys' fees and costs;

4)     Award CoStar such other relief as justice requires.

## COUNT III
## BREACH OF CONTRACT (SECTION 2.5 OF THE AGREEMENTS) BY DEFENDANTS GALVIN AND HAYS

61.    CoStar realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 of the Complaint.

62.    As part of the terms and conditions of their employment with CoStar, Galvin and Hays entered into agreements titled "Terms and Conditions of Employment" ("The Agreements") with CoStar in January of 2005.

63.    Hays executed his agreement with CoStar on January 24, 2005.  Galvin executed his agreement with CoStar on January 25, 2005.

64.    Under Section 2.5(c) of The Agreements, both Galvin and Hays promised that for a period of one year from their termination of employment with CoStar, they would not become "employed by, own, manage, operate, control, participate in, or be associated in any way with the ownership, management, operation or control of any company or business engaged in the provision of commercial real estate information or software . . .".

65.    Galvin and Hays breached Section 2.5(c) of The Agreements by becoming employed by Centers & Malls, a "company or business engaged in the provision of commercial real estate or software," within one year of their termination of employment with CoStar.

66.    Such breach was intentional, willful, wanton, and in direct and knowing contravention of The Agreements.

67.    CoStar suffered damages as a result of Galvin and Hays' breach of The Agreements.  Galvin and Hays' conduct has harmed and will continue to harm CoStar.  As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained.  CoStar's remedy at law is not itself adequate to compensate it for the

injuries inflicted by Galvin and Hays.  Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Galvin and Hays from violating the non-competition provisions of their employment agreements with CoStar, and extending the non-competition provision of the employment agreement for one year from the Court's entry of such injunction;

2) Award monetary damages in amounts to be proven, but expected to exceed $75,000, plus interest and reasonable attorneys' fees and costs;

3) Award CoStar such other relief as justice requires.

### COUNT IV
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### BY DEFENDANT CENTERS & MALLS

68. CoStar realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of the Complaint.

69. At all times relevant to this Complaint a valid contract existed between CoStar and Galvin whereby Galvin was prohibited from disclosing CoStar's confidential information to third parties, and from becoming employed by a company engaged in the provision of commercial real estate information or software for a period of one year after the termination of his employment with CoStar.

70. At all times relevant to this Complaint a valid contract existed between CoStar and Hays whereby Hays was prohibited from disclosing CoStar's confidential information to third parties, and from becoming employed by a company engaged in the provision of

commercial real estate information or software for a period of one year after the termination of his employment with CoStar.

71.     Centers & Malls was aware, or should have been aware of Galvin's and Hays' employment agreements with CoStar and of the prohibited actions.

72.     Upon information and belief, Centers & Malls intentionally and without legal justification induced Galvin and Hays to breach their employment agreements with CoStar.

73.     Galvin and Hays did, in fact, breach their employment agreements with CoStar by becoming employed by Centers & Malls within a year of their termination of employment with CoStar, and by disclosing confidential information from the CoStar/NRB database to Centers & Malls.

74.     The aforementioned actions by Centers & Malls in inducing Galvin and Hays to breach their employment agreements with CoStar constitute willful and wanton disregard for the contractual rights of CoStar.

75.     CoStar suffered damages as a result of the aforementioned actions of Centers & Malls. Centers & Malls' conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays. Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

      1)     Grant a preliminary and permanent injunction preventing Centers & Malls from interfering with CoStar's employment agreements with Galvin & Hays;

2)      Order Centers & Malls to terminate Galvin & Hays as such employment constitutes a violation of Galvin and Hays' employment agreements with CoStar and order Galvin & Hays to refrain from violating the non-compete provisions of their employment agreements for one year from the date of the Court's orders;

3)      Order Centers & Malls to abide by the terms and conditions of the CoStar employment agreements with Galvin & Hays;

4)      Award monetary damages in amounts to be proven, but which are expected to exceed $75,000, including punitive damages, interest, attorneys' fees, and costs for Centers and Malls' willful and wanton disregard for the contractual rights of CoStar;

5)      Award CoStar such other relief as justice requires.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP BY DEFENDANT CENTERS & MALLS

76.      Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 75 of this Complaint.

77.      Centers & Malls intentionally and willfully has used, and continues to use, confidential and proprietary information unlawfully taken from the CoStar/NRB database to solicit customers in competition with Plaintiffs.  Such information was prepared at great effort and expense by CoStar's/NRB's research professionals.

78.      Centers & Malls' unlawful acquisition and use of CoStar's/NRB's proprietary information is calculated to cause damage and loss to CoStar and NRB in the conduct of their lawful business.

79.     Centers & Malls' unlawful acquisition and use of CoStar/NRB's proprietary information was done intentionally and without justification for the purpose of causing CoStar and NRB damage and loss.

80.     Plaintiffs suffered damages as a result of the aforementioned actions of Centers & Malls.  Centers & Malls' conduct has harmed and will continue to harm Plaintiffs.  As a result, Plaintiffs have suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained.  Plaintiffs' remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays.  Accordingly, Plaintiffs are entitled to damages and injunctive relief.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)     Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar/NRB;

2)     Award monetary damages in amounts to be proven, but which are expected to exceed $75,000, including punitive damages, interest, attorneys' fees, and costs for Centers and Malls' willful and wanton disregard for the contractual rights of Plaintiffs;

3)     Award Plaintiffs such other relief as justice requires.

**COUNT VI
VIOLATION OF §43(A) OF THE LANHAM ACT
BY DEFENDANT CENTERS & MALLS**

81.     Plaintiffs reallege and incorporate by reference the assertions set forth in paragraphs 1 through 80 of the Complaint.

82.     By distributing information unlawfully taken from the CoStar/NRB database to its current and/or prospective customers, Centers & Malls is falsely and misleadingly designating the true origins of this information.  Further, upon information and belief, Galvin and/or Hays are falsely representing to the public that Centers & Malls, and its shopping center directory product, is the successor to National Research Bureau, when in fact they know that NRB, not Centers & Malls, acquired all rights to the Shopping Center Directory from National Research Bureau, a division of Claritas, and that it is licensed exclusively to, and is used for the exclusive benefit of, CoStar.

83.     The false and misleading designation as to the origins of the information taken form the CoStar/NRB database is being used by Centers & Malls in commerce.

84.     The aforementioned actions by Centers & Malls are likely to cause confusion and to deceive as to the true origin of the information that Centers & Malls is disseminating to its customers and/or prospective customers, and thus constitute "reverse passing off" which is prohibited under Section 43(a) of the Lanham Act [15 U.S.C.A. §1125(a)].

85.     CoStar has suffered and will continue to suffer damages as a result of the aforementioned acts.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)     Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar/NRB;

2)     Award monetary damages in the amount of $1 million, including interest, attorneys' fees, and costs;

5)      Award statutory damages under the Lanham Act and such other relief as justice requires.

### COUNT VII
### VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT; MISAPPROPRIATION OF TRADE SECRET MATERIAL

86.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 85 of the Complaint.

87.     The CoStar/NRB shopping center database is a compilation or combination of data, photographs and other information about shopping centers throughout the United States. The data, photographs and other information are in part publicly available information, and in part proprietary works created by CoStar/NRB, which have been prepared through substantial and prolonged efforts at market research, data verification, and unique arrangements of the data into searchable and organized formats for use by the CoStar/NRB licensees.

88.     CoStar and NRB have taken extensive steps to maintain the secret and proprietary nature of the source database so that it is not generally available as compiled, combined and formatted, except under license agreements.   These steps include (without limitation) confidentiality agreements in the employment agreements of CoStar/NRB employees, license agreements with CoStar/NRB licensees that strictly limit use of and access to the database, annual copyright registrations for each updated version of the database, and ongoing registrations for photographs taken by CoStar photographers.  Indeed, the CoStar/NRB business is dependent upon only its licensees being given access to the database for fees and only in a limited manner, so that others may not take and re-license or sell the database that has been prepared at great expense by CoStar/NRB.

89.     Defendants Galvin and Hays, and/or Centers & Malls, have, without permission, taken and used the CoStar/NRB database and incorporated it into the Centers & Malls product being licensed to the public for profit, thereby misappropriating the CoStar/NRB database in violation of the Maryland Uniform Trade Secrets Act (Annot. Code of Md., Commercial Law Article, §11-1201 *et. seq.*).

90.     The misappropriation of the CoStar/NRB database was intentional, willful, malicious and in bad faith, by each of the Defendants, who knew of the confidentiality provisions in the employment contracts of Galvin and Hays when they worked for CoStar, and who knew that CoStar/NRB protected the database and did not permit copying or re-use of it beyond the limited scope set out in CoStar licenses.

91.     Plaintiffs have suffered and will continue to suffer economic damages and Centers & Malls will continue to be unjustly enriched by this misappropriation until and unless appropriate remedies are ordered.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)      Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar/NRB;

2)      Award monetary damages for actual loss caused by the misappropriation and/or monetary damages for the unjust enrichment of Centers & Malls, in amounts to be proven, but which are expected to exceed $75,000.00;

3)      Award Exemplary Damages;

4)      Award Attorneys' Fees and costs, and such other relief as justice requires.

## COUNT VIII
## CONSTRUCTIVE TRUST AS TO DEFENDANTS
## CENTERS & MALLS, GALVIN, AND HAYS

92.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 91 of the Complaint.

93.    NRB is the rightful and exclusive owner, and CoStar is the beneficial owner and exclusive licensee, of the copyrighted and proprietary information contained within the CoStar/NRB database.

94.    Defendants Centers & Malls, Galvin, and Hays, have unlawfully acquired the proprietary and copyrighted information contained within the CoStar/NRB database, and are disseminating this information to current and/or prospective customers.

95.    Upon information and belief, Defendants have earned income and continue to earn income by distributing CoStar/NRB's proprietary and copyrighted information to current and/or prospective customers.

96.    The acquisition and use by Defendants of CoStar/NRB's proprietary and copyrighted information was done without the authorization or consent of Plaintiffs.

97.    There is no adequate remedy at law to fully compensate Plaintiffs for Defendants' unlawful acquisition and use of the proprietary and copyrighted information.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court impose a constructive trust on all money earned by Centers & Malls, Galvin, and Hays as a result of their unlawful use, in whole or in part, of information obtained from the CoStar/NRB database.

## COUNT IX
## CONVERSION AS TO DEFENDANTS
## CENTERS & MALLS, GALVIN, AND HAYS

98.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 97 of the Complaint.

99.     Defendants have misappropriated the CoStar/NRB database and converted it to their own use, without Plaintiffs' permission, interfering with Plaintiffs' use and/or depriving Plaintiffs of use of the database, which is owned by NRB and of which CoStar is the beneficial owner.

100.    As a result, Plaintiffs have been damaged by loss of use or interference with their rights and use of their proprietary database, causing actual loss of business to Plaintiffs, and wrongfully obtained profits collected by Defendants.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)     Award monetary damages for actual loss caused by the conversion by Defendants, in amounts to be proven, but which are expected to exceed $75,000.00;

2)     Award Exemplary Damages;

3)     Award Attorney's Fees and costs, and such other relief as justice requires.

### COUNT X
### CIVIL CONSPIRACY AS TO DEFENDANTS
### CENTERS & MALLS, GALVIN, AND HAYS

101.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 100 of the Complaint.

102.    Defendants, in combination with each other, and with others, conspired, planned and acted to infringe intentionally on Plaintiffs' copyrights, pass off Plaintiffs' proprietary database as Defendants' own database,  breach and/or interfere with Plaintiffs' contracts with Galvin and Hays and with prospective business relationships, misappropriate trade secrets, and convert to their own use, without Plaintiffs' permission, interfering with Plaintiffs' use and/or depriving Plaintiffs of use of the CoStar/NRB database, which is owned by NRB and for which CoStar is the beneficial owner.

103.   As a result, Plaintiffs have been damaged by loss of use or interference with their rights and use of their proprietary database, causing actual loss of business to Plaintiffs, and wrongfully obtained profits collected by Defendants.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)   Award monetary damages for actual loss caused by the conversion by Defendants, in amounts to be proven, but which are expected to exceed $75,000.00;

2)   Award Exemplary Damages;

3)   Award Attorney's Fees and costs, and such other relief as justice requires.

## COUNT XI
## VIOLATION BY DEFENDANTS OF 18 U.S.C. §1030

104.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 103 of the Complaint.

105.   The computer system on which the CoStar/NRB database resides is a computer used in interstate commerce or communication, and is thus a protected computer under 18 U.S.C. §1030.

106.   When Defendants intentionally accessed the proprietary portions of the CoStar/NRB database and/or website, for purposes of taking a copy of the CoStar/NRB database for unauthorized use by Centers & Malls,   Defendants intentionally accessed a protected computer without authorization.

107.   Defendants' unauthorized access of a protected computer has caused damage to Plaintiffs that has amounted in an aggregated loss of over $5000 in a one-year period.

108.   Defendants' conduct has harmed and will continue to harm Plaintiffs.  As a result, Plaintiffs have suffered and will continue to suffer losses, damages, and irreparable injury, in amounts not yet fully ascertained.  Plaintiffs' remedies at law are not in themselves adequate to

fully compensate Plaintiffs for injuries inflicted by Defendants' actions.  Accordingly, Plaintiffs are also entitled to damages and injunctive relief.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1)   Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar/NRB;

2)   Award monetary damages for actual loss caused by the misappropriation and/or monetary damages for the unjust enrichment of Centers  Malls, in amounts to be proven, but which are expected to exceed $75,000.00;

3)   Award Exemplary Damages;

4)   Award Attorneys' Fees and costs, and such other relief as justice requires.

Respectfully submitted,

CARR MALONEY P.C.

By:_____
Thomas L. McCally, Esquire
Kevin M. Murphy, Esquire
Nat P. Calamis, Esquire
1615 L Street, NW, Suite 500
Washington, DC 20036
(202) 310-5500
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all counts and issues triable by jury.

By:_____
Thomas L. McCally, Esquire