**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **COSTAR REALTY INFORMATION, INC., ET AL.,**<br><br>**PLAINTIFFS,**<br><br>**v.**<br><br>**CENTERS & MALLS, LLC, ET AL.,**<br><br>**DEFENDANTS.** | ) | **Case No. 8:07 CV 1182 AW** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

Come now the defendants Centers & Malls, LLC ("Centers & Malls"), Robert Galvin ("Galvin") and Guy Hays ("Hays"), by counsel Rubin, Winston, Diercks, Harris & Cooke, LLP, and opposes plaintiffs' motion for a temporary restraining order (1) requiring Centers & Malls to cease and desist disseminating information from the "CoStar NRB copyrighted database"[1]; and (2) requiring defendants Galvin and Hays to cease and desist their employment with Centers & Malls.

No injunctive relief should be granted by the Court against any of the defendants for the following reasons:[2]

[1] While plaintiffs label the database at issue the "CoStar NRB copyrighted database," Exhibit 14 to plaintiffs's motion papers, which purports to contain the registration for the database, lists National Research Bureau, Inc. ("NRB") as the author and copyright claimant, not CoStar.

[2] In addition to the reasons stated herein, during the telephonic hearing with the Court, defendants raised the argument that plaintiffs were legally disabled from proceeding or maintaining suit since National Research Bureau was not registered to do business in Maryland and that CoStar was also disabled as it is claiming through National Research Bureau. Counsel for plaintiffs stated to the Court that National Research Bureau was in fact in good standing in Maryland. This was not true. National Research Bureau, Inc. registered to do business in

Dockets.Justia.com

1. The Court lacks personal jurisdiction over Centers & Malls under the Maryland long-arm statute;

2. The Court lacks personal jurisdiction over the defendants Galvin and Hays as the only basis to assert such jurisdiction in an unenforceable agreement to submit to the jurisdiction of this Court;

3. Plaintiffs do not have a substantial likelihood of succeeding on their attempt to enforce the non-compete against Galvin and Hays, as the non-compete is unenforceable, as it lacks any consideration and, even if the agreement were enforceable, the non-compete is overly broad in its scope;

4. Plaintiffs do not have a substantial likelihood of succeeding on their copyright infringement claim as the database at issue is a non-copyrightable compilation.

5. Plaintiffs do not have a substantial likelihood of succeeding on their trade secret count as the information in the database is not a trade secret.

**STANDARD FOR ISSUE OF PRELIMINARY INJUNCTIVE RELIEF**

"Preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted), *quoted and cited with approval*, *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 524 (4th Cir. 2003). Defendants do not disagree with the four part test set out in plaintiffs' memorandum of law, namely (1) likelihood of success on the merits, (2) likelihood of irreparable harm to the plaintiff if relief not granted, (3) likelihood of irreparable

---

Maryland for the first time on May 15, 2007, a week after the telephonic hearing.

harm to the defendant if the relief is granted, and (4) the public interest. (Plaintiffs' Memo of Law p. 12).

## I. THE COURT LACKS PERSONAL JURISDICTION OVER CENTERS & MALLS UNDER THE MARYLAND LONG-ARM STATUTE AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

Plaintiffs allege three bases upon which they claim the Court can exercise personal jurisdiction over Centers & Malls. The Complaint, at paragraph 9, alleges that Centers & Malls "(a) regularly transacts business within the State of Maryland; (b) contracts to supply services with customers located in Maryland; or (c) knowingly and/or intentionally caused tortious injury to Plaintiffs in the State of Maryland by acts outside the state while regularly soliciting and or engaging in other persistent conduct within in the State of Maryland. These three allegations are among the grounds for asserting jurisdiction found in the Maryland long-arm statute. Md. Courts and Judicial Proceedings Code Ann. § 6-103(b) (Supp. 2001).

A federal court sitting in Maryland can assert personal jurisdiction over a non-resident defendant only to the extent that the Maryland long-arm statute confers jurisdiction and the assertion of jurisdiction comports with the due process clause of the Fourteenth Amendment. *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 365-366 (D. Md. 2004). Maryland purports to exercise personal jurisdiction over non-resident defendants to the full extent permitted by the United States Constitution. *Hansford v. District of Columbia*, 329 Md. 112, 128 n.7, 617 A.2d 1057, 1064 n.7 (1993). The constitutional standard is the well known "minimum contacts" standard promulgated in *International Shoe*. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (if the defendant be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice). Hence, the reach or the Maryland long-arm statute "merges" with the constitutional standard. *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d at 366.

Maryland may exercise jurisdiction over a non-resident under its long arm statute either where it does so generally or specifically. *Id.* For general jurisdiction the contacts with the forum state must be continuous, systematic, and fairly extensive. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). Plaintiffs apparently allege such general jurisdiction when they allege that defendant Centers & Malls "regularly" transacts business in Maryland. As will be demonstrated, Centers & Malls conduct does not satisfy this standard.[3]

Centers & Malls has no customers in Maryland, and with the exception of plaintiff's investigator who tortiously misrepresented himself so as to induce Centers & Malls to sell him a subscription, has never had a Maryland customer.[4] Plaintiff's counsel, during the telephonic hearing on Plaintiff's request for a TRO, stated that, even if Centers & Malls had no customers in

---

[3] Specific jurisdiction requires that the non-resident defendant, among other elements, purposely direct his activities toward residents of the forum state. Plaintiffs do not so allege. Indeed, nor could plaintiffs properly do so as, in a case directly on point, the Fourth Circuit Court of Appeals has held that "a New Hampshire resident's collusion with a Florida resident to appropriate the customer lists and trade secrets of a South Carolina corporation, was not so intentionally directed at South Carolina as to warrant an exercise of specific jurisdiction." *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d at 367, *citing, ESAB Group Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

[4] Attempts to manufacture jurisdiction should not be countenanced by this Court and bring into question the conduct of the Plaintiffs who are asking for equitable injunctive relief while they or their attorneys and/or agents have unclean hands. When this undercover operative first attempted to purchase a subscription to the Centers & Malls database by his fraudulent misrepresentations, defendant Hays after hearing this customers "needs" suggested that he would be better served by buying a subscription from CoStar. The undercover operative replied that he preferred Centers & Malls because CoStar was too expensive. (Hays Dec.).

Maryland, that its use of 15,000 persons to gather shopping center information constituted "regularly transacting business in Maryland" to the extent that such persons entered into Maryland. This statement is legally incorrect. *See*, *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("When, however, defendant's only activities consist of advertising and employing salesmen [who are present in the forum state] to solicit orders, we think that fairness will not permit a state to assume jurisdiction."). However the facts are not as Plaintiffs suppose. Centers & Malls contracts out the work of gathering information it puts in its database to independent contractors. (See Van Siclen Declaration attached hereto as Exhibit 1). None of its contracts in this regard are with Maryland businesses. (Van Siclen Declaration). Hence, Centers & Malls does not have employees who gather the vast bulk of the information on shopping centers that is used in its database. Indeed it obtained the information from independent contractors. (Van Siclen Declaration).

As to the second allegation, namely that Centers & Malls contracts to supply services with customers located in Maryland, this is simply not true. Centers & Malls has never contracted to supply services to customers in Maryland, since with the exception of plaintiff' undercover operative, Centers & Malls has never had a Maryland customer. (Van Siclen Declaration).

Lastly, plaintiffs allege that the Court has jurisdiction over Centers & Malls because Centers & Malls engaged in tortious conduct that injured plaintiffs by acts outside the state while regularly soliciting and or engaging in other persistent conduct within Maryland. In order for this subsection of the Maryland long-arm statute to confer jurisdiction, the "other contacts between the corporation and the state must be fairly extensive before the burden of defending a suit there

may be imposed upon it without offending traditional notions of fair play and substantial justice." *Ratliff v. Cooper Laboratories, Inc*., 444 F.2d at 748. *See, O'Neal v. Hicks Brokerage Co.,* 537 F.2d 1266, 1268 (4th Cir. 1976) ("The sufficiency of contacts threshold is elevated when the cause does not arise in the forum state or derive from the foreign corporation's transactions in the state"). Here, there are not only no "fairly extensive" contacts, there are no other contacts with the forum state. (Van Siclen Declaration).

The plaintiffs have the burden of establishing jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Here, the plain facts do not provide a basis for this Court to assert personal jurisdiction over Centers & Malls. As such, no injunctive relief can issue against Centers & Malls and the plaintiffs' request for preliminary injunctive relief must be denied.

## II. THE AGREEMENT WHICH PURPORTS TO GIVE THIS COURT PERSONAL JURISDICTION OVER DEFENDANTS GALVIN AND HAYS AND WHICH PURPORTS TO OBLIGATE THEM UNDER A NON-COMPETE IS A FULLY INTEGRATED AGREEMENT WHICH IS UNENFORCEABLE AS IT LACKS ANY CONSIDERATION.

Plaintiffs' motion papers, at tabs 2 and 3, contain identical documents entitled "Terms and Conditions of Employment." The document at tab2 was signed by defendant Galvin and the general counsel of plaintiff CoStar. The document at tab3 was signed by defendant Hays and the general counsel of plaintiff CoStar. Plaintiffs allege in their Complaint, at paragraph 10, that personal jurisdiction is proper because defendants Galvin and Hays "consented to the jurisdiction of this Court. . . ."[5] Plaintiffs also allege that defendants Galvin and Hays are burdened with a

---

[5] Plaintiffs also allege that these defendants committed tortious acts with foreseeable consequences in Maryland. While this is not the test for jurisdiction, even if it had been correctly alleged, tortious conduct outside Maryland creates jurisdiction in Maryland only if there are fairly extensive contacts with the forum jurisdiction. See Point I, *supra.* This ground fails with regard to these defendants for the same reason it fails with regard to defendant Centers & Malls, namely

non-compete contained in these same documents. Hence, in order to be successful, plaintiffs must carry their burden and demonstrate that these documents are enforceable.[6] As will be demonstrated below, this they cannot do. As a result they are not entitled to any preliminary injunctive relief.

The identical agreements signed by defendants Galvin and Hays contain an integration clause which reads in full:

> 4.2 Entire Agreement. This Agreement constitutes the entire agreement between the parties. There are no agreements understandings, restrictions, warranties, or representations between the parties relating to this subject matter other than those in this Agreement.

This clause, known variously as an integration clause, a merger clause or a zipper clause, makes this agreement fully integrated. Where an agreement is fully integrated, the parol evidence rule excludes evidence of oral assurances made before or contemporaneous with the execution of the agreement. *Lesniak & Assocs. v. View Sys.*, 2003 U.S. Dist. LEXIS 13731 (D. Md. 2003); *Foundation Software laboratories, Inc. v. Digital Equipment Corp.*, 807 F. Supp. 1195 (D. Md. 1992).

A reading of this agreement establishes beyond argument that CoStar provided no

---

there have been virtually no contacts by any of the defendants with Maryland.

[6] Absent a holding that the consent to jurisdiction is enforceable, this Court lacks personal jurisdiction over Galvin and Hays. Neither is a resident or citizen of Maryland. Neither regularly transacts business in Maryland. Neither contracts to supply goods, food, services, or manufactured goods in Maryland. Neither has an interest in or possesses real property in Maryland. Neither acts as an insurer or surety in Maryland. Neither caused tortious injury in Maryland from an act in Maryland. Neither conducts a persistent course of conduct in Maryland to give the Court jurisdiction over Galvin or Hays for tortious acts committed outside Maryland causing injury in Maryland. (*See* Declaration of Robert Galvin attached hereto as Exhibit 2). (*See* Declaration of Guy Hays attached hereto as Exhibit 3).

consideration of any sort. Consideration is required to enforce a covenant not to compete. *Becker v. Bailey*, 268 Md. 93, 96 (Md. 1973). The documents in the instant case provide no promise of employment; rather they state what the conditions of employment will be. They do not obligate CoStar to employ either of these defendants. Nor do they promise to provide any financial consideration of any kind. In short they are totally devoid of any consideration on the part of CoStar. During the telephonic hearing on plaintiffs' application for a TRO, when this was pointed out to the Court counsel for plaintiffs responded that the consideration was continued employment. Since this promise is nowhere to be found in the "Agreement" counsel could only prove this statement by the introduction of parol evidence. However, such evidence will not be admitted where, as here, the agreement is fully integrated.

The Court of Appeals of Maryland considered this very issue in an opinion issued two months ago in *Cochran v. Norkunas*, 919 A.2d 700 ( Md. 2007). In *Cochran*, the Court had granted certiorari to consider the following question:

> When a contractual document, which states that it is a complete agreement, contains an integration clause and a clause stating that it cannot be modified except by an agreement in writing signed by the parties is duly executed by all parties, is it an error for a court to look outside of the four corners of the document to determine that a contract was formed?

Hence, the issue present in the instant case is an issue thought important enough and of enough legal significance so as to cause the Maryland Court of Appeals to grant certiorari.[7] While the Court of Appeals ultimately concluded that the facts of *Cochran* did not squarely put this issue before the Court of Appeals, the court did state that parol evidence may be used to **contravene**

---

[7] Like the clause in *Cochran*, the agreement in the instant case also contains a prohibition on modifications except where the modification is written. However that clause is not at issue in the instant case.

the existence of a contract. *Id.* at n.6 and n. 9. Hence, a proper reading of *Cochran* suggests that while parol evidence may be used to contravene the existence of a contract, it cannot be used to establish the existence of a contract which contains an integration clause.

There is no enforceable contract whereby defendants Hays and Galvin agreed to the jurisdiction of this Court.

## III. PLAINTIFFS ARE UNLIKELY TO SUCCEED IN ENFORCING THE COVENANTS NOT TO COMPETE AGAINST DEFENDANTS GALVIN AND HAYS AS THE COVENANTS ARE NOT SUPPORTED BY CONSIDERATION, AND EVEN IF SUPPORTED BY CONSIDERATION ARE OVERLY BROAD.

As demonstrated above in II. *supra.,*the covenants not to compete are unenforceable as they lack any consideration. This argument will not be repeated but is adopted and restated herein.

Under Maryland law, covenants not to compete will not be enforced unless they are reasonable in scope, duration and geographic area. *Becker v. Bailey*, 268 Md. at 96. Covenants not to compete will not be enforced if they work an undue hardship on the employee. *Ruhl v. F.A. Bartlett Tree Expert Co.*, 245 Md. 118, 123-24, 225 A.2d 288, 291 (1967). "[A] determination of enforceability should be made based on the scope of each particular covenant itself, and, if that, on its face, is not too broad, the facts and circumstances of each case must be examined." *Millward v. Gerstung International Sport Education, Inc.*, 268 Md. 483, 488 (Md. 1973). Hence, the Court of Appeals has set out a two step analysis. The first step requires a facial analysis of the covenant to determine if it is too broad on its face. *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. Appx. 435, 441 (4th Cir. 2004) ("it is apparent that the Maryland Court of Appeals maintained the general requirement that a restrictive covenant must meet some

threshold of facial reasonableness in order to be enforceable.") If the covenant passes this facial analysis then it must be analyzed "as applied" to the facts and circumstances of each case. As will be demonstrated below the covenant in this case is facially over broad and, as applied to defendants Galvin and Hays, works an impermissible hardship on them. As such it is unenforceable.

The identical covenants which plaintiffs are trying to enforce against defendants Galvin and Hays reads as follows:

> Consequently, Employee covenants and agrees that so long as Employee is employed by the Company and for a period of one (1) year after such employment is terminated, whether voluntarily or involuntarily. Employee will not, without the express written consent of the Chief Executive Officer of the Company, directly or indirectly, be employed by, own, manage, operate, control, participate in, or be associated in any manner with the ownership, management, operation or control of any company or business engaged in the provision of commercial real estate information or software, or such other related businesses as the Company may become engaged during the Employee's employment with the Company. In recognition with the international nature of the Company's business the restriction shall apply anywhere in the United States, Canada and the United Kingdom. The Employee and Company specifically agree that such companies or businesses restricted by this Agreement currently include without limitation, LoopNet, Inc., Xceligent, Black's Guide, Dorsey Publishing, Commercial Search, Cityfeet, Octane Ventures, Officespace.com, Marshall & Swift, Yale Robbins, and REIS.

On its face, this clause prohibits Galvin and Hays from being associated with, either as an employee, stockholder, consultant, or in any other manner, with any business in North America or the English speaking portion of Europe that provides commercial real estate information or software. Under this clause Galvin and Hays could not work as a commercial real estate agent anywhere in North America. They could not be employed by any newspaper or magazine that publishes commercial real estate listings. They could not work for Microsoft, Google, Yahoo or any other internet giant that provides software which permits searches that produce results that

contain commercial real estate information. Neither could they own shares of any publically traded company that provides commercial real information or software such as, Microsoft, the Washington *Post*, Coldwell Banker, Remax and on and on. Nor does the covenant permit employment with a company engaged in commercial real estate information even where the employment is unrelated to that company's commercial real estate activities. Galvin and Hays could not work in any management position for the Washington *Post,* for example, even if such position had nothing to do with commercial real estate. Likewise, Galvin and Hays could not sell **residential** real estate for Coldwell Banker since they would then "be employed by . . . [a] company or business engaged in the provision of commercial real estate information." Hence, on its face this covenant is over broad and unenforceable.

Restrictive covenants also must not work an undue hardship on an employee. *Covenants Not to Compete* 36 Akron L. Rev. 49, 72-73 (2002).[8]

> A restrictive covenant must not be unduly burdensome on the employee by making it difficult or impossible for him to work in any appropriate new job. In *Schlumberger Well Service v. Blaker*,[9] the court denied enforcement of a covenant barring an executive of an oil and gas company, for two years, from employment with any competitor of employer "in substantially every oil and gas producing area in ... the United States and Canada... ." The court found that enforcing this restriction would "be potentially devastating to both [the employee] and his family."

Likewise as applied to Galvin and Hays, this covenant is over broad in its geographic scope and the scope of the activities it purports to restrict. Basically, unless Galvin and Hays are willing to leave North America and go to a foreign country, except of course the UK, they are

---

[8] The author is Professor John Dwight Ingram, Professor of Law, The John Marshall Law School.

[9] 623 F. Supp. 1310 (S.D. Ind. 1985).

unemployable in their area of expertise and experience. As such, enforcement of this covenant will work an undue hardship on Galvin and Hays. *Id.*

Lastly, plaintiffs' request for an injunction prohibiting Galvin and Hays from working for Centers & Malls is very shortly to become moot. The purported one year non-compete ends on June 25, 2007 and July 5, 2007 respectively. (Declarations of Galvin and Hays). As such, it hardly merits the use of this Court's resources.

## IV. PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THEIR COPYRIGHT INFRINGEMENT CLAIM AS THE DATABASE AT ISSUE IS A NON-COPYRIGHTABLE COMPILATION.

Plaintiffs claim that defendants have infringed on it copyright of a publication known as the "Shopping Center Directory" annually produced for the years 2002-2006. (Complaint ¶ 10). (Plaintiffs refer to the Shopping Center Directory in their complaint and motion papers as the "CoStar/NRB database.") This database was distributed in paper format and on CD-ROMs. (Complaint ¶ 10). The paper and CD-ROM formats allegedly were phased out after 2005. (Complaint ¶ 10). (Plaintiffs attached to their motion papers at Exhibit 14 documents that show that 2006 editions of the paper format and CD-ROM formats were produced). CoStar now offers information from its database through access to its website. (Complaint ¶ 18).

Plaintiffs claim that the information in the database "are not part of a repository of information generally available for free." (Complaint ¶ 17). This statement is simply not true. The Shopping Center Directory is widely available in the United States at 119 libraries. A list of those libraries is attached hereto as Exhibit 4. A page from the card catalog from the Montgomery County Public Library and the New York Public Library demonstrating that the Shopping Center Directory (that is the CoStar/NRB database) are in the library, are attached

hereto as Exhibits 5 and 6. A second page from the New York Public Library catalogue (attached hereto as Exhibit 7) shows that the library received the 2006 Shopping Center Directory on April 17, 2007. Hence, less than a month before plaintiffs filed their Complaint claiming that this data is not available to the public and demanding a TRO, they delivered a copy of the database to the New York Public Library where anyone can read and copy it. It is beyond argument that the data in the database is available to the general public. In addition the Shopping Center Directory database was available at the industry's trade association, International Council of Shopping Centers, where any member of the association is free to read and copy it.

A sample listing from the publically available CoStar/NRB database was obtained from the New York Public Library on May 22, 2007. (See Declaration of Adrienne M. Bauer attached hereto as Exhibit 8) (See sample listing attached hereto as Exhibit 9). This is a listing for the Creekview Shopping Center in Warrington, Pennsylvania. The data contained in the listing include (1) the shopping center name and address; (2) description of shopping center; (3) physical configuration of the shopping center; (4) construction activity; (5) leasing agent; (6) management company; (7) developer; (8) mailing address; (9) center personnel; (10) anchor tenants; and (11) tenants. These data are unremarkable, non-original and non-creative. In the shopping center business, it is the functional equivalent of a telephone directory listing. It contains the basic data about the center. It is arranged unremarkably by state and within the state alphabetically.

By way of comparison, Centers & Malls listing for the same shopping center is attached as Exhibit 10. It contains the following categories of information: (1) the shopping center name and address with a description of shopping center; (2) owner/developer; (3) management

company; (4) leasing agent; and (5) tenants. As can be readily seen, Centers & Malls arrangement of the data is not the same as CoStar's arrangement.[10]

To succeed in a copyright infringement action plaintiffs need to prove that the work in question has a registered copyright and that defendant copied "protected elements" of the work. *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996). Plaintiffs claim that defendant Centers & Malls copied and distributed said "protected elements" of their database. In this case the data in the database are a compilation of data and not, for example a novel or screenplay.

The Supreme Court considered this issue in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991). In *Feist*, the Court considered whether the defendant Feist, a private publisher of telephone directories, infringed on Rural Telephone's copyright of its white pages when Feist copied and published Rural's white page entries in its own directory. The Court framed the issue thusly: "We granted certiorari, (citation omitted), to determine whether the copyright in Rural's directory protects the names, towns, and telephone numbers copied by Feist. *Id.* at 344. The Court held that such a copying did not infringe on Rural's copyright.

The Court provided the key to its decision in stating that,

> The key to resolving the tension lies in understanding why facts are not copyrightable. The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some

---

[10] There are also significant variations in the information. For example, the public CoStar/NRB database. For example, CoStar/NRB lists the leasing agent as "PREIT-Rubin, Inc." whereas Centers & Malls lists the leasing agent as PREIT. CoStar/NRB lists the contact as "Tim Rubin" and provides a fax number whereas Centers & Malls lists the contact as Tim Rubin with no fax number. An examination of each category reveals variations in the content and organization of the content. In addition, the Centers & Malls listing contains the square footage occupied by some stores which is not included in the CoStar/NRB database.

> minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. (Internal citations omitted).

*Id.* at 345.

The court went on to explain that,

> This inevitably means that the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication **to aid in preparing a competing work**, so long as the competing work does not feature the same selection and arrangement.

*Id.* at 349 (emphasis added).

The Court went on to reject the "sweat of the brow" doctrine under which some courts accorded copyright protection to compilers because, they rationalized, it would be unfair not to afford protection to one who spent significant effort to compile the facts. The Court held, "the 1976 revisions to the Copyright Act leave no doubt that originality, not 'sweat of the brow,' is the touchstone of copyright protection in directories and other fact-based works." *Id* at 359-60.

The Court held that the constitutional standard of "originality" in selection or presentation was not met in this case. The Court held that the raw data certainly was not copyrightable and its obvious alphabetical arrangement by surname was "commonplace" and lacked even *de minimus* creativity . The Court ended where it began by observing that "copyright rewards originality, not effort." *Id.* at 364.

In the instant case, the complaint alleges that the database is "in part publically available information and in part proprietary works . . . ." (Complaint ¶ 20). The Complaint goes on to allege that the copyright infringement is based upon Centers & Malls copying of "the listing contained in the CoStar/NRB database. . . ." (Complaint ¶ 49). The listing of data in the

Shopping Center Directory is merely a listing by shopping center of the name of the center, the name of manger of the center, the name of the leasing agent, and other obvious information. As such, "a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Id.* at 349. There is no allegation, nor could here be, that Centers & Malls database features the same selection and arrangement. The copyright in the instant case does not protect the names and other related shopping center data contained in the Shopping Center Directory anymore that Rural Telephone's copyright protected the names, addresses and telephone numbers of the subscribers listed in Rural's white page directory.

Plaintiffs also allege at various places in their complaint that they expended "enormous effort and expense" to compile their database. (*See, e.g.*, Complaint ¶ 16). They imply that the data they collected is entitled to copyright protection because it was complied with "the sweat of their brow." However, as set forth above, *Feist*, in no uncertain terms, held that data not otherwise entitled to copyright protection becomes eligible for copyright protection because it required great effort or expense to compile.

The data that is alleged to have been copied lacked the required element of creativity in the same way that Rural Telephone's white pages lacked creativity. One element of the CoStar database that would, if copied, arguably supply the element of copying data that contained a creative work might be the photographs of the shopping centers that plaintiffs claim are contained in their database. However, it is not alleged by plaintiffs that Centers & Malls used any photographs in their database. That is because Centers & Malls database does not contain any photograph that appears in the CoStar database.

While not contained in the Complaint, plaintiffs' motion papers state that the Centers & Malls data is searchable in the same manner that data in their database is searchable.[11] As set forth in the Van Siclen declaration, this is not remarkable for two reasons. First, Garrett Van Siclen, a principal in Centers & Malls, designed the search criteria for the old National Research Bureau database that has "morphed" into the CoStar database. Second, that in the same way that all airline travel sites present the same obvious search criteria for persons booking airline travel, the search criteria for persons in the shopping center industry are also obvious and unremarkable. (Van Siclen Dec.).

## V. PLAINTIFFS DO NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THEIR MARYLAND UNIFORM TRADE SECRETS CLAIM AS THE INFORMATION IN THE DATABASE AT ISSUE IS NOT A TRADE SECRET.

In their motion for a temporary restraining order and supporting memorandum, plaintiffs rely entirely on allegations that the defendants have unlawfully acquired and used copyrighted information owned by plaintiffs and that defendants Hays and Galvin have violated their employment agreements. Those claims have been dealt with *supra*. Since, however, there is a reference in the motion for a temporary restraining order to "proprietary" information owned by the plaintiffs and Count VII of the Complaint alleges violations of the Maryland Uniform Trade Secrets Act (the "Maryland Act"), defendants, out of an abundance of caution, will also demonstrate that the CoStar/NRB database at issue is not a trade secret.

While not conceding that the Maryland Uniform Trade Secrets Act could be applied to

[11] Centers & Malls cannot verify this claim because neither it, nor its officers and contractors have ever accessed the CoStar/NRB on-line database. This stands in stark contrast to the fraudulently obtained access to Centers & Malls' database by CoStar through its undercover operative.

conduct which occurred outside of Maryland, defendants will, for the sake of argument, assume for this opposition only that the Maryland Act would apply, since the Maryland legislature has dictated that the Maryland Act "'be applied and construed to effectuate its general purpose to make uniform the law with respect to' trade secrets among the states that have enacted the Uniform Trade Secrets Act." *Motor City Bagels, LLC v. The American Bagel Company*, 50 F. Supp.2d 460, 478 (D. Md. 1999) (*citing* Md. Com. Law Code Ann. §11-1203).

The Maryland Act defines a "trade secret" as follows:

> Information, including a formula, pattern, compilation, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy

Md. Com. Law Code Ann. §11-1201(e). Thus, "to be protected under Maryland law, information must be secret, and its value must derive from the secrecy. In addition, the owner of the information must use reasonable efforts to safeguard the confidentiality of the information." *Motor City Bagels, LLC v. The American Bagel Company*, 50 F. Supp. at 478 (*quoting, Montgomery County Ass'n of Realtors, Inc. v. RealtyPhoto Master Corp.*, 878 F. Supp. 804, 814 (D.Md. 1995), *aff'd*, 91 F.3d 132 (4th Cir. 1996).

The simple fact is that the CoStar/NRB database at issue is not "secret" for two reasons. First, the information simply is not "secret." All of the information is readily available in the marketplace. *Optic Graphics, Inc. v. Agee*, 87 Md. App. 770, 788, 591 A.2d 578 (Md. Ct. Sp. App. 1991) (manufacturer's marketing plan is not a trade secret under Maryland law because it was based on information "readily available from the marketplace.") A combination of

information in the public domain could be a trade secret, as long as the combination itself is a secret. *Comprehensive Technologies, Inc. v. Software Artisans, Inc.* 3 F.3d 730, 736 (4th Cir. 1993). The declaration of Garret Van Siclen establishes that the source of the information was the CoStar/NRB Shopping Center Directory. As further established in the declarations of Garret Van Siclen and Adrienne M. Bauer and Exhibit 9, the Shopping Center Directory is available in 119 university, trade association and public libraries across the country. The Declaration of Adrienne M. Bauer recounts how Ms. Bauer had a New York Public Library staff member copy pages containing information on shopping centers and an example of the copied pages is attached to her declaration. Thus the combination of information in the Shopping Center Directory is publicly available and cannot by any stretch of the imagination be found to be "secret."

Second, Plaintiffs failed to take reasonable steps to maintain any purported secrecy of the information in the Shopping Center Directory when it distributed copies of the Directory to university, trade association and public libraries.[12] The Supreme Court has observed that the disclosure of a purported trade secret to others who are under no obligation to protect the confidentiality of the information extinguishes the property right. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *Contracts Materials Processing, Inc. v. GmbH Catalysts*, 164 F. Supp.2d 520, 535 (D. Md. 2001); *Motor City Bagels, LLC v. The American Bagel Company*, 50 F. Supp. at 480. That is exactly what happened in this case. When the plaintiffs placed copies of the Shopping Center Directory with over 100 university, trade association and public libraries, the foreseeable consequence of placement of the Directory in the libraries is that the information

[12]Permitting the placement of a copy of the Shopping Center Directory in a trade association library guaranteed that the information in the directory would become available to CoStar/NRB's current and potential competitors.

in the Directory will be accessible to –and disclosed to – the public and will no longer be confidential. Indeed, permitting the placement of copies of the Shopping Center Directory in more than 100 university, trade association and public libraries around the country made the disclosure of the information in the Directory to the public an absolute certainty.

Plaintiffs bear the burden of producing evidence that the information in their database meets the definition of a trade secret and that plaintiffs took reasonable steps to ensure the secrecy of the information they claim is a trade secret. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661, 664 (4th Cir. 1993); *Contracts Materials Processing, Inc. v. GmbH Catalysts*, 164 F. Supp.2d at 534. Since the information is not secret and plaintiff failed to take reasonable steps to ensure the secrecy of the information when they permitted the Shopping Center Directory to be placed in more than 100 university, trade association and public libraries, the only reasonable conclusion is that the information used by C&M from the Shopping Center Directory was and is not a trade secret. Hence, plaintiffs are not entitled to a preliminary injunction.

## CONCLUSION

For all the reasons set forth above, the Court should deny plaintiffs' application for injunctive relief.

Dated: May 23, 2007

Respectfully submitted,

/s/ Walter E. Diercks
Walter E. Diercks (Bar # 22397)
Jeffrey Harris (Bar # 03198)
Rubin, Winston, Diercks, Harris & Cooke, LLP
Sixth Floor
1155 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 861-0870
Attorneys for Defendants