CoStar Realty Information, Inc. et al v. Centers & Malls, LLC et al Doc. 39

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CoSTAR REALTY INFORMATION, INC.,<br>a Delaware Corporation,<br>2 Bethesda Metro Center, 10th Floor<br>Bethesda, Maryland 20814;<br><br>Plaintiff,<br><br>v.<br><br>CENTERS & MALLS, LLC,<br>a Delaware Corporation,<br>736 N. Western Avenue, Suite 246<br>Lake Forest, Illinois 60045;<br><br>and<br><br>GARRETT VAN SICLEN, an Individual<br>49 Vaughn Farm Road<br>Manchester Center, Vermont 05255<br><br>and<br><br>ROBERT GALVIN, an Individual<br>427 Carroll Avenue<br>Mamaroneck, NY 10543;<br><br>and<br><br>GUY HAYS, an Individual;<br>196 New Haven Avenue, #106<br>Derby, CT 06418-2145<br><br>Defendants. | * | Case No.: 07CV 01182 AW |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FIRST AMENDED COMPLAINT**

Plaintiff CoSTAR REALTY INFORMATION, INC., a Delaware Corporation, (referenced herein as "CoStar") for its First Amended Complaint against Defendants Centers &

Dockets.Justia.com

Malls, LLC ("Centers & Malls"), Garrett Van Siclen ("Van Siclen"), Robert Galvin ("Galvin"), and Guy Hays ("Hays"), alleges as follows:

## PARTIES

1. CoStar Realty Information, Inc. ("CoStar") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, MD 20814-5388.

2. Centers & Malls, LLC ("Centers & Malls") is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business listed as 736 N. Western Avenue, Suite 246, Lake Forest, Illinois 60045.

3. Garrett Van Siclen ("Van Siclen") is a Vermont domiciliary residing at 49 Vaughn Farm Road, Manchester Center, Vermont 05255.

4. Robert Galvin ("Galvin") is a New York domiciliary residing at 427 Carroll Avenue, Mamaroneck, New York 10543.

5. Guy Hays ("Hays") is a Connecticut domiciliary residing at 196 New Haven Avenue, #106, Derby, Connecticut 06418-2145.

## JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction over Plaintiff's claims for copyright infringement and related claims pursuant to 17 U.S.C. §501 *et seq*.,, under 18 U.S.C. §1030 and under 28 U.S.C. §1331.

7. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of Maryland pursuant to 28 U.S.C. §1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8. This action also invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. §1332 in that it is a controversy between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Personal jurisdiction over Centers & Malls is proper in this state because, upon information and belief, Centers & Malls: a) regularly transacts business within the State of Maryland; b) contracts to supply services with customers located within the State of Maryland; and c) knowingly and/or intentionally caused tortious injury to Plaintiff in the State of Maryland by acts outside the state while regularly soliciting business and/or engaging in other persistent conduct within the State of Maryland.

10. Personal jurisdiction over Van Siclen is proper in this state because, upon information and belief, Van Siclen, individually and/or through his company Centers & Malls, of which he is an owner: a) regularly transacts business within the State of Maryland; b) contracts to supply goods and services with customers located within the State of Maryland; and c) knowingly and/or intentionally caused tortious injury to Plaintiff in the State of Maryland by acts outside the state while regularly soliciting business and/or engaging in other persistent conduct within the State of Maryland. Van Siclen committed tortious and other actionable acts alleged herein with foreseeable consequences within the State of Maryland.

11. Personal jurisdiction over Galvin and Hays is proper in this state because Galvin and Hays have, by written contract, consented to the jurisdiction of this Court and committed the tortious and other actionable acts alleged herein with foreseeable consequences in this State. *See* Galvin Terms and Conditions of Employment, attached hereto as Exhibit 1, Section 4.4; *see also* Hays Terms and Conditions of Employment, attached hereto as Exhibit 2, Section 4.4.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## BACKGROUND

13. Centers & Malls markets and sells or licenses an online database which contains information about malls and shopping centers located in the United States and Canada. Access to the Centers & Malls database is given to customers who purchase a membership. The Centers & Malls website describes its database as "the premier data resource for the retail real estate industry."

14. Garrett Van Siclen is the founder, President, and an owner of Centers & Malls.

15. Robert Galvin is currently employed as Centers & Malls' Vice President of Sales and Strategic Partnerships. He was formerly a CoStar sales employee.

16. Guy Hays is currently employed as Centers & Malls' Director of Client Development. He was formerly a CoStar sales employee.

17. CoStar is a leading national commercial real estate information services provider. At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop the most comprehensive commercial real estate information service available. CoStar currently employs hundreds of trained research professionals who, along with a field research force utilizing specially equipped field research vehicles, canvass the country gathering commercial real estate information for integration into CoStar's services. CoStar's researchers collect and analyze commercial real estate information through millions of phone calls, e-mails, Internet updates and faxes each year, in addition to field inspections, public records review, news monitoring and direct mail. CoStar's field researchers physically inspect, photograph and verify existing information about commercial properties. CoStar employs

approximately 550 people in Maryland alone, where it has centralized research centers in Columbia and Bethesda, Maryland.

18. The information and photographs in CoStar's database services are not part of a repository of information generally available for free. CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage lenders, investors, owners, property managers, security analysts, REIT (real estate investment trust) professionals and appraisers/mortgage underwriters. CoStar's information licenses, among other things, enable its licensees to find available tenant space for themselves or their customers, match buyers to properties for sale, find tenants, research brokers, locate market-related information, and value commercial real estate sales transactions. CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs. CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

19. With the exception of a very limited amount of its information services that CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users ("Authorized Users"). Interested members of the general public can become authorized users either by (a) registering and entering into an online agreement for access and use, or (b) entering into a written license agreement and subscribing to one or more of CoStar's information services.

20. Access to CoStar's subscription information services and their associated databases is limited to those Authorized Users who gain authorization pursuant to written license

agreements that limit their access and use of CoStar's databases to specific numbers of designated, licensed users and specific licensed sites.

21. On January 20, 2005, National Research Bureau, Inc. ("NRB") was formed by CoStar in connection with its purchase from Claritas Inc. of all of the assets, properties and rights of the division of Claritas, Inc., known as National Research Bureau. National Research Bureau, while owned by Claritas, had developed, copyrighted and then licensed (on a limited, non-exclusive basis) to its customers an extensive directory and database (in paper and searchable CD-ROM formats) which contained information about retail shopping center properties throughout the United States. This directory and database was known as the Shopping Center Directory, and was referred to that way in annual copyright filings by National Research Bureau dating back several years. CoStar formed NRB to acquire the assets, properties and rights of National Research Bureau and to then hold those assets, properties and rights for the exclusive use and benefit of CoStar as part of CoStar's offerings of real estate information services for non-exclusive licensing to the public. NRB has assigned its copyrights in the Shopping Center Directory to CoStar, including any accrued causes of action arising from these copyrights. In addition, NRB has recently been merged into CoStar, thereby giving CoStar all of the rights and standing to pursue legal and equitable claims related to the Shopping Center Directory.

22. CoStar's acquisition of NRB enabled CoStar to increase its presence in the retail real estate sector. In 2006, CoStar phased out the NRB product line as a separately marketed product while incorporating NRB's products into CoStar's own offerings. CoStar expended vast amounts of time, resources, and money in completing this acquisition, so that it could obtain the exclusive proprietary rights to the NRB database. CoStar continues to expend resources to update the database (referenced hereinafter as the "CoStar database") which is incorporated in products that are licensed (on a limited, non-exclusive basis) to CoStar subscribers. The data,

photographs, search and sort functions and related computer code, and other information that constitute the CoStar database include, in part, some publicly available information, and in part original, proprietary expressions, which have been prepared by use of substantial and prolonged efforts of market research, verification of data, and unique arrangements of the data into searchable and organized formats for use by the CoStar licensees.

## EVENTS GIVING RISE TO THE LAWSUIT

### The CoStar Database

23. To detect unauthorized use of its products, the CoStar database contains certain "seed listings," which include fictitious information that could not be duplicated by third-party research, such that these "seed listings" would only appear in a competitor's database if the NRB database had been misappropriated.

24. After NRB acquired the National Research Bureau database and related rights for the benefit of CoStar in January 2005, NRB and CoStar modified some of the seed listings in the Shopping Center Directory that had previously been used by National Research Bureau.

### Galvin and Hays

25. Galvin and Hays were employees of National Research Bureau, a division of Claritas, Inc., prior to NRB's acquisition of National Research Bureau for the benefit of CoStar. Galvin and Hays became employees of CoStar upon the January 2005 acquisition of National Research Bureau.

26. As employees of both National Research Bureau and later CoStar, Galvin and Hays had access to and knowledge of the Shopping Center Directory both before and after NRB's acquisition of National Research Bureau for the benefit of CoStar in January of 2005..

27. As employees of both National Research Bureau and later CoStar, Galvin and Hays had access to and knowledge of other confidential information related to the Shopping

Center Directory, including the customers that subscribed to this database, the pricing of this database, and the business strategy used by National Research Bureau and CoStar to market and sell this database.

28. Upon information and belief, during their time as National Research Bureau employees, Galvin and Hays became acquainted with Van Siclen.

29. On January 25 and January 24, 2005, respectively, both Galvin and Hays executed agreements with CoStar titled "Terms and Conditions of Employment." ("The Agreements").

30. Section 2.1 of The Agreements obligated Galvin and Hays to a duty of confidentiality. Under, Section 2.1(b) of The Agreements, Galvin and Hays agreed not to "disclose or divulge any confidential information to any person, entity, firm, or company. . ." Under Section 2.1(e) of The Agreements, Galvin and Hays acknowledged "that in the event of a breach of this Section (Duty of Confidentiality) by Employee, the Company may suffer irreparable harm and will be entitled to injunctive relief as well as all other remedies available at law or in equity."

31. Section 2.5 of The Agreements obligated Galvin and Hays to a duty of non-competition. Under Section 2.5(b) of The Agreements, Galvin and Hays acknowledged that "engaging in any business which is directly or indirectly competitive with the Company will cause it great and irreparable harm." Under Section 2.5(c) of The Agreements, Galvin and Hays agreed that for a period of one year after the termination of their employment with CoStar, they would not "directly or indirectly, be employed by, own, manage, operate, control, participate in, or be associated in any manner with the ownership, management, operation or control of any company or business engaged in the provision of commercial real estate information or software . . .".

32. Under Section 4.4 of The Agreements, Galvin and Hays acknowledged that The Agreements would be governed by the laws of Maryland, and that any proceeding arising out of a dispute over The Agreements would be brought in either the Circuit Court for Montgomery County, Maryland, or the United States District Court for the District of Maryland.

33. Galvin's employment with CoStar was terminated on June 21, 2006. Upon his termination, CoStar gave Galvin a severance payment of over $30,000.00. Hays' employment with CoStar was terminated on July 5, 2006.

**Van Siclen and Centers & Malls**

34. Van Siclen was formerly employed as a Senior Vice President for Trade Dimensions, a subsidiary of Claritas, Inc. Claritas, Inc. was a licensee of the Shopping Center Directory prior to its acquisition by NRB for the benefit of CoStar in January of 2005.

35. On or about December of 2005, Van Siclen retired from Trade Dimensions. When he left Trade Dimensions, without permission or authorization, he took with him a CD-ROM version of the copyrighted Shopping Center Directory, which had been licensed to Claritas, Inc only for specific, limited use. Van Siclen knew of the limited terms of the Claritas license for the Shopping Center Directory, and knew at the time that he took the CD-ROM that he was not authorized to do so, and that he did not have any license for use of the Shopping Center Directory. Further, he knew that the Shopping Center Directory had been purchased by NRB for the benefit of CoStar, and that CoStar's operations and headquarters were based in Maryland.

36. Upon his retirement from Trade Dimensions, Van Siclen founded Centers & Malls, a company that provides customers with a database which contains property listings for thousands of retail shopping centers throughout the United States and Canada. Centers & Malls

was incorporated in Delaware on May 12, 2006. It filed for limited liability status in Illinois on June 2, 2006.

37. Van Siclen created the Centers & Malls database by sending a copy of the Shopping Center Directory CD-ROM that he unlawfully took from his former employer to a computer programmer based in Toronto, Canada. The computer programmer copied information from the Shopping Center Directory and used it to create the Centers & Malls database. Van Siclen estimates that 70-80% of the property listings contained in the Centers & Malls database at its inception were taken directly from the Shopping Center Directory.

38. According to Centers & Malls' website, at www.centersandmalls.com/about-us.shtml, the company "was founded to serve the expanding needs of professionals and companies in the United States, Canada, and worldwide." The website further claims that its database offers "the premier database for the retail real estate industry." The website also claims that Centers & Malls has 15,000 field researchers who provide on-the-ground intelligence and update its extensive database of photographs yearly.

39. The Centers & Malls website states that the company's database has listings for 26,000 retail shopping centers throughout the United States and Canada. *See* http://www.centersandmalls.com/see-inside.shtml Centers and Malls has been selling and or licensing for profit various versions of its database since early 2006. Van Siclen knew that his actions in taking the Shopping Center Directory without permission, copying it to create the Centers & Malls database, and then selling it or licensing it, in many cases to CoStar's own customers, at a much lower price point, would in fact cause direct harm to CoStar in Maryland.

40. At some point in 2006 Galvin and Hays began working for Centers & Malls. Galvin is currently Centers & Malls' Vice President for Sales & Strategic Partnerships. Hays is currently Centers & Malls' Director of Client Development.

41. In October 2006, CoStar employee Michael Griffin ("Griffin") came across a Centers & Malls promotional booth at a convention of the International Conference of Shopping Centers, at which Centers & Malls personnel presented the company as conducting a business that was licensing for fees a database of information about shopping centers throughout the United States.

42. Griffin became suspicious of Centers & Malls because he had never heard of the company before, and because its promotional materials boasted that its database contained over 20,000 listings of shopping center and malls. A database of such size, if lawfully developed, would normally require a substantial amount of time, effort and investment to create, yet it seemed that Centers & Malls had appeared almost overnight with an extensive database of shopping center properties, including detailed information on each.

43. Griffin became more suspicious when he learned that Van Siclen, whom he knew from Trade Dimensions, and Galvin and Hays, whom he knew as former CoStar coworkers, were working for Centers & Malls.

44. At Griffin's suggestion, CoStar investigated Centers & Malls, and subscribed to its database. In the course of subscribing to the database, CoStar investigators corresponded with Van Siclen, Galvin, and Hays.

45. A review of Centers & Malls' database revealed that Centers & Malls was listing several properties that contained "seed listings" that had been inserted into the CoStar database between August 2005 and December 2005.

46. Specifically, the names and addresses for the owner/developer information and/or management company information of several properties contained within the CoStar database were actually fictitious "seed listings." In fact, the name for the owner/developer and/or management company used on these "seed listings" was the name of a former National Research

Bureau employee. Centers & Malls' database contains at least six property listings with this fictitious information.

47. The presence of these seed listings in the Centers & Malls database is conclusive evidence that the CoStar database data was inserted into the Centers & Malls database.

48. In addition to the above, Hays provided CoStar's investigator with a "Centers & Malls License Agreement Subscription Form" as part of the process of obtaining access to the Centers & Malls database. This form was forwarded to CoStar's investigator as a Microsoft Word document. CoStar inspected this form, and in particular its "metadata." Metadata is data about data, and in the case of Microsoft Word, certain files contain data about their original author, date and time of creation, and other attributes. While inspecting the metadata associated with the form, CoStar discovered that the form had been authored by Suzanne Park, CoStar's Art Director and a longtime employee. Thus, even the subscription order forms that Centers & Malls sends to prospective customers have been unlawfully taken from CoStar. Further, CoStar's investigators have compared data available through subscription to Centers & Malls website with the CoStar database, and have found identical spacing, punctuation, and presentation appearance of data in a very high percentage of the sampled and compared property entries.

49. Neither CoStar nor NRB has ever licensed to Centers & Malls, or given permission for use by Centers & Malls, of the CoStar database.

50. Centers & Malls is directly competing with CoStar for customers seeking shopping center real estate information.

51. Centers & Mall is licensing for fees to its customers a database of real estate information on shopping centers that has been prepared with the unauthorized use of the CoStar database.

## COUNT I
## COPYRIGHT INFRINGEMENT BY DEFENDANTS
## CENTERS & MALLS, VAN SICLEN, GALVIN, & HAYS

52. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 51 of the Complaint.

53. National Research Bureau, as a subsidiary or division of Claritas, then later NRB, as a subsidiary of CoStar, have consistently copyrighted the Shopping Center Directory. The copyright registration of the "2005 Shopping Center Directory" was submitted by NRB on January 24, 2005. The copyright of the "2006 Shopping Center Directory" was submitted by NRB on February 23, 2006. The Shopping Center Directory, each version of it, is an original, creative work and compilation, including data compiled from many sources, verified and organized into searchable and multiple use formats, along with proprietary photographs of properties taken by or for CoStar.

54. In January 2005, NRB, as a subsidiary of CoStar, became the owner of all rights to the Shopping Center Directory database, holding those rights for the exclusive use and benefit of CoStar. CoStar and NRB have subsequently revised and updated the database, along with the above-referenced copyright registration filed on February 23, 2006. NRB has assigned its copyrights in the Shopping Center Directory to CoStar, including accrued causes of action, and NRB has subsequently been merged into CoStar, leaving CoStar with all of the rights to pursue claims of infringement related to the Shopping Center Directory.

55. Centers & Malls, Van Siclen, Galvin, and Hays have infringed, directly, vicariously, or contributorily, the copyrights in the CoStar database by obtaining and/or facilitating and/or causing the copying of protected portions of the Shopping Center Directory and distributing this copyrighted material to their customers for profit without authorization or

consent. Upon information and belief, Centers & Malls, Van Siclen, Galvin, and Hays obtained the CoStar database without permission or authorization,, and facilitated the unauthorized and illegal use and publication to the public of the CoStar database. As such, Defendants have knowingly and in bad faith, vicariously and/or contributorily infringed the copyright of Plaintiff. The insertion of the CoStar database into Centers & Malls products and distribution of that to the public for profit is direct copyright infringement by Defendants, and has been done by Defendants knowingly and in bad faith. All of these acts by Centers & Malls, Van Siclen, Galvin and Hays were done with their knowledge that the Shopping Center Directory was the copyrighted and proprietary material of CoStar and NRB, and that the Defendants did not have license, consent or authorization to take, use, publish, distribute and profit from the Plaintiff's proprietary and copyrighted work.

56. Defendants' conduct has been willful within the meaning of the Copyright Act. At a minimum, Defendants acted with willful blindness to and in reckless disregard of the NRB registered copyrights now owned by CoStar.

57. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement. 17 U.S.C. §501. Plaintiff has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill. Plaintiff is entitled to recover damages, which include losses of customers and revenue and any and all profits Defendants have made as a result of their wrongful conduct. 17 U.S.C. §504. Alternatively, Plaintiff is entitled to statutory damages under 17 U.S.C. §504(c).

58. In addition, because Defendants' infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2).

59. Plaintiff is also entitled to injunctive relief pursuant to 17 U.S.C. §502 and to an order impounding any and all infringing materials pursuant to 17 U.S.C. §503. Plaintiff has no

adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the NRB copyrights now owned by CoStar are unique and valuable property which have no readily determinable market value; b) Defendants' infringement harms Plaintiff's business reputation and goodwill such that Plaintiff could not be made whole by any monetary award; and c) Defendants' wrongful conduct, and the resulting damage to Plaintiff, is continuing. Plaintiff is also entitled to recover its attorneys' fees and costs of suit. 17 U.S.C. §505.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar;
2) Enter an Order impounding any and all of CoStar's copyrighted materials currently in the possession of Defendants;
3) Award Plaintiff monetary damages for all of their losses and all of the profits made by Defendants as a result of their wrongful conduct, in amounts to be proven, but expected to exceed $500,000;
4) Award Plaintiff exemplary damages for the infringement done willfully and in bad faith;
5) Award Plaintiff statutory damages for the willful nature of Defendants' copyright infringement;
6) Impose a constructive trust over all profits derived by Defendants through their unlawful copyright infringement;
7) Award Plaintiff the attorneys' fees and costs of this lawsuit;
8) Award Plaintiff such other relief as justice requires.

## COUNT II
## BREACH OF CONTRACT (SECTION 2.1 OF THE AGREEMENTS) BY DEFENDANTS GALVIN AND HAYS

60. CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 59 of the Complaint.

61. As part of the terms and conditions of their employment with CoStar, Galvin and Hays entered into agreements titled "Terms and Conditions of Employment" ("The Agreements") with CoStar in January of 2005.

62. Hays executed his agreement with CoStar on January 24, 2005. Galvin executed his agreement with CoStar on January 25, 2005.

63. Under Section 2.1(b) of The Agreements, both Galvin and Hays promised not to "disclose or divulge any Confidential Information to any person, entity, firm, or company . . . ."

64. Upon information and belief, Galvin and Hays breached Section 2.1(b) of The Agreements by disclosing confidential information relating to the CoStar/NRB database to their current employer Centers & Malls, including but not limited to the proprietary customer list for the Shopping Center Directory, the pricing information for the database, and the business strategy used by National Research Bureau and CoStar to market and sell the database.

65. Such breach was intentional, willful, wanton, and in direct and knowing contravention of The Agreements.

66. CoStar suffered damages as a result of Galvin and Hays' breach of The Agreements. Galvin and Hays' conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays. Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

1) Grant a preliminary and permanent injunction preventing Galvin and Hays from violating the confidentiality provisions of their employment agreements with CoStar;

2) Enter an Order impounding any and all of CoStar's confidential information currently in the possession of Galvin and Hays;

3) Award monetary damages in amounts to be proven, but expected to exceed $75,000, plus interest and reasonable attorneys' fees and costs;

4) Award CoStar such other relief as justice requires.

## COUNT III
## BREACH OF CONTRACT (SECTION 2.5 OF THE AGREEMENTS) BY DEFENDANTS GALVIN AND HAYS

67. CoStar realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 of the Complaint.

68. As part of the terms and conditions of their employment with CoStar, Galvin and Hays entered into agreements titled "Terms and Conditions of Employment" ("The Agreements") with CoStar in January of 2005.

69. Hays executed his agreement with CoStar on January 24, 2005. Galvin executed his agreement with CoStar on January 25, 2005.

70. Under Section 2.5(c) of The Agreements, both Galvin and Hays promised that for a period of one year from their termination of employment with CoStar, they would not become "employed by, own, manage, operate, control, participate in, or be associated in any way with the ownership, management, operation or control of any company or business engaged in the provision of commercial real estate information or software . . .".

71. Galvin and Hays breached Section 2.5(c) of The Agreements by becoming employed by Centers & Malls, a "company or business engaged in the provision of commercial real estate or software," within one year of their termination of employment with CoStar.

72. Such breach was intentional, willful, wanton, and in direct and knowing contravention of The Agreements.

73. CoStar suffered damages as a result of Galvin and Hays' breach of The Agreements. Galvin and Hays' conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays. Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Galvin and Hays from violating the non-competition provisions of their employment agreements with CoStar, and extending the non-competition provision of the employment agreement for one year from the Court's entry of such injunction;

2) Award monetary damages in amounts to be proven, but expected to exceed $75,000, plus interest and reasonable attorneys' fees and costs;

3) Award CoStar such other relief as justice requires.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**BY DEFENDANTS VAN SICLEN AND CENTERS & MALLS**

74. CoStar realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 of the Complaint.

75 At all times relevant to this Complaint a valid contract existed between CoStar and Galvin whereby Galvin was prohibited from disclosing CoStar's confidential information to third parties, and from becoming employed by a company engaged in the provision of commercial real estate information or software for a period of one year after the termination of his employment with CoStar.

76. At all times relevant to this Complaint a valid contract existed between CoStar and Hays whereby Hays was prohibited from disclosing CoStar's confidential information to third parties, and from becoming employed by a company engaged in the provision of commercial real estate information or software for a period of one year after the termination of his employment with CoStar.

77. Centers & Malls and Van Siclen were aware of Galvin's and Hays' employment agreements with CoStar and of the prohibited actions. Upon information and belief, Van Siclen specifically advised Galvin and Hays that the non-competition provisions of their employment agreements with CoStar were unenforceable.

78. Centers & Malls and Van Siclen intentionally and without legal justification induced Galvin and Hays to breach their employment agreements with CoStar.

79. Galvin and Hays did, in fact, breach their employment agreements with CoStar by becoming employed by Centers & Malls within a year of their termination of employment with CoStar, and by disclosing confidential information relating to the CoStar/NRB database to Centers & Malls.

80. The aforementioned actions by Centers & Malls and Van Siclen in inducing Galvin and Hays to breach their employment agreements with CoStar constitute willful and wanton disregard for the contractual rights of CoStar.

81. CoStar suffered damages as a result of the aforementioned actions of Centers & Malls and Van Siclen. Centers & Malls and Van Siclen's conduct has harmed and will continue to harm CoStar. As a result, CoStar has suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for the injuries inflicted by Galvin and Hays. Accordingly, CoStar is entitled to damages and injunctive relief.

WHEREFORE, CoStar respectfully requests that this Honorable Court:

1) Grant a preliminary and permanent injunction preventing Centers & Malls and Van Siclen from interfering with CoStar's employment agreements with Galvin & Hays;

2) Order Centers & Malls and Van Siclen to terminate Galvin & Hays as such employment constitutes a violation of Galvin and Hays' employment agreements with CoStar and order Galvin & Hays to refrain from violating the non-compete provisions of their employment agreements for one year from the date of the Court's orders;

3) Order Centers & Malls and Van Siclen to abide by the terms and conditions of the CoStar employment agreements with Galvin & Hays;

4) Award monetary damages in amounts to be proven, but which are expected to exceed $75,000, including punitive damages, interest, attorneys' fees, and costs for Centers and Malls and Van Siclen's willful and wanton disregard for the contractual rights of CoStar;

5) Award CoStar such other relief as justice requires.

## COUNT V
## VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT; MISAPPROPRIATION OF TRADE SECRET MATERIAL BY DEFENDANTS CENTERS & MALLS, VAN SICLEN, GALVIN, AND HAYS

82. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 81 of the Complaint.

83. The CoStar database is a compilation or combination of data, photographs and other information about shopping centers throughout the United States. The data, photographs and other information are in part publicly available information, and in part proprietary works created by CoStar and/or created by National Research Bureau and acquired by CoStar,, which have been prepared through substantial and prolonged efforts at market research, data verification, and unique arrangements of the data into searchable and organized formats for use by the CoStar licensees.

84. Also, Galvin and Hays were exposed to substantial proprietary information of CoStar while they were CoStar employees, including but not limited to customer lists for the Shopping Center Directory, pricing information for the product, and overall CoStar business strategies.

85. CoStar has taken extensive steps to maintain the secret and proprietary nature of the source of its database and proprietary information so that it is not generally available to the public. The database is not generally available as compiled, combined and formatted, except under license agreements. The steps taken by CoStar to maintain the secrecy of its database and proprietary information include (without limitation) confidentiality agreements in the employment agreements of CoStar employees, license agreements with CoStar licensees that strictly limit use of and access to the database, annual copyright registrations for each updated version of the database, and ongoing registrations for photographs taken by CoStar photographers. Indeed, the CoStar business is dependent upon only its licensees being given

access to the database for fees and only in a limited manner, so that others may not take and re-license or sell the database that has been prepared at great expense by CoStar.

86. Defendants Centers & Malls and Van Siclen have, without permission, taken and used the CoStar database and incorporated it into the Centers & Malls product being licensed to the public for profit, thereby misappropriating the CoStar database in violation of the Maryland Uniform Trade Secrets Act (Annot. Code of Md., Commercial Law Article, §11-1201 *et. seq.*).

87. Upon information and belief Defendants Cneters & Malls, Van Siclen, Galvin and Hays have, without permission, taken and used proprietary information of CoStar, including without limitation the customer list for the Shopping Center Directory. Galvin and Hays are using this proprietary information to divert business opportunities away from CoStar in violation of the Maryland Uniform Trade Secrets Act (Annot. Code of Md., Commerical Law Article, §11-1201 *et seq*.

88. The misappropriation of the CoStar's database and other proprietary information by Defendants was intentional, willful, malicious and in bad faith. Each of the Defendants knew of the confidentiality provisions in the employment contracts of Galvin and Hays when they worked for CoStar, and knew that CoStar protected its database and did not permit copying or re-use of it beyond the limited scope set out in CoStar licenses.

89. Plaintiff has suffered and will continue to suffer economic damages and Defendants will continue to be unjustly enriched by this misappropriation until and unless appropriate remedies are ordered.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Defendants from continuing use of CoStar's shopping center database and other proprietary information;

2) Award monetary damages for actual loss caused by the misappropriation and/or monetary damages for the unjust enrichment of Defendants, in amounts to be proven, but which are expected to exceed $75,000.00;

3) Award Exemplary Damages;

4) Award Attorneys' Fees and costs, and such other relief as justice requires.

**COUNT VI**
**CONVERSION AS TO DEFENDANTS**
**CENTERS & MALLS AND VAN SICLEN**

90. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 89 of the Complaint.

91. In late 2005, Van Siclen took a CD-ROM containing the CoStar database from his former employer without authorization. The CD-ROM taken by Van Siclen was a physical object embodying National Research Bureau's work, the rights of which had been acquired by CoStar. Van Siclen unlawfully retained this CD-ROM, and sent it to a computer programmer in Toronto, Canada, where it was copied and used to create the Centers & Malls database.

92. By taking the above actions, Defendants Van Siclen and Centers & Malls have unlawfully retained and misappropriated the physical object embodying the CoStar database and converted it to their own use, without Plaintiff's permission, interfering with Plaintiff's use and/or depriving Plaintiff of use of the database, which is owned by CoStar.

93. As a result, Plaintiff has been damaged by loss of use or interference with its rights and use of its proprietary database, causing actual loss of business to Plaintiff, and wrongfully obtained profits collected by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1) Award monetary damages for actual loss caused by the conversion by Defendants, in amounts to be proven, but which are expected to exceed $75,000.00;

2) Award Exemplary Damages;

3) Award Attorney's Fees and costs, and such other relief as justice requires.

## COUNT VII
## CIVIL CONSPIRACY AS TO DEFENDANTS VAN SICLEN, GALVIN, AND HAYS

94. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 93 of the Complaint.

95. Defendants, in combination with each other, and with others, conspired, planned and acted to infringe intentionally on Plaintiff's copyrights, , and misappropriate Plaintiff's trade secrets.

96. Upon information and belief, Defendants conspired to commit the above listed tortious actions while Galvin and Hays were still employed by Plaintiff CoStar.

97. As a result, Plaintiff has been damaged by loss of use or interference with its rights and use of its proprietary database, causing actual loss of business to Plaintiff, and wrongfully obtained profits collected by Defendants.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1) Award monetary damages for actual loss caused by the conversion by Defendants, in amounts to be proven, but which are expected to exceed $75,000.00;

2) Award Exemplary Damages;

3) Award Attorney's Fees and costs, and such other relief as justice requires.

**COUNT VIII**
**VIOLATION OF 18 U.S.C. §1030 BY DEFENDANTS CENTERS & MALLS AND VAN SICLEN**

98. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 97 of the Complaint.

99. The computer system on which the CoStar database resides is a computer used in interstate commerce or communication, and is thus a protected computer under 18 U.S.C. §1030.

100. When Defendants intentionally accessed the proprietary portions of the CoStar database and/or website, for purposes of taking CoStar business forms and/or a copy of the CoStar database for unauthorized use by Centers & Malls, Defendants intentionally accessed a protected computer without authorization.

101. Defendants' unauthorized access of a protected computer has caused damage to Plaintiff that has amounted in an aggregated loss of over $5000 in a one-year period.

102. Defendants' conduct has harmed and will continue to harm Plaintiff. As a result, Plaintiff has suffered and will continue to suffer losses, damages, and irreparable injury, in amounts not yet fully ascertained. Plaintiff's remedies at law are not in themselves adequate to fully compensate Plaintiff for injuries inflicted by Defendants' actions. Accordingly, Plaintiff is also entitled to damages and injunctive relief.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1) Enter a preliminary and permanent injunction preventing Centers & Malls from continuing use of its shopping center database, or alternatively that portion of the database that was misappropriated from CoStar;

2) Award monetary damages for actual loss caused by the misappropriation and/or monetary damages for the unjust enrichment of Centers Malls, in amounts to be proven, but which are expected to exceed $75,000.00;

3) Award Exemplary Damages;

4) Award Attorneys' Fees and costs, and such other relief as justice requires.

Respectfully submitted,

CARR MALONEY P.C.

By:________________________

Thomas L. McCally, Esquire
Kevin M. Murphy, Esquire
Nat P. Calamis, Esquire
1615 L Street, NW, Suite 500
Washington, DC 20036
(202) 310-5500
Attorneys for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all counts and issues triable by jury.

By:________________________

Thomas L. McCally, Esquire

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of July, 2007, a copy of the foregoing was electronically mailed to: Walter E. Diercks, Esquire and Jeffrey Harris, Esquire, Rubin, Winston, Diercks, Harris & Cooke LLP, 1155 Connecticut Avenue, NW, 6th Floor, Washington, DC 20036 Attorneys for Defendants.

________________________________

Thomas L. McCally