**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CoSTAR REALTY INFORMATION, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 07 CV 01182 AW |
| | * | |
| CENTERS & MALLS, LLC, *et. al.* | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO DEFENDANTS GARRETT VAN SICLEN'S MOTION TO DISMISS**

Plaintiff, CoStar Realty Information, Inc. ("CoStar"), through counsel, hereby files this Opposition to Defendant Garrett Van Siclen's Motion to Dismiss. In support of this Opposition, Plaintiffs state as follows:

## I. BACKGROUND

This case arises out of the misappropriation of a copyright-protected database. The undisputed facts are as follows. In January of 2005, CoStar acquired, for approximately $4 million, the rights to the Shopping Center Directory, a computer database that provides information for thousands of shopping centers across the country. In November or December of 2005, Garrett Van Siclen, without authorization, took a CD-ROM copy of the Shopping Center Directory from his former employer Trade Dimensions. After retiring from Trade Dimensions, Mr. Van Siclen sent this CD-ROM to a computer programmer in Canada where it was used as the foundation of the Centers & Malls database. Centers & Malls is a business founded by Mr. Van Siclen that competes directly with CoStar in the sale of commercial real estate information. In addition to the above, Mr. Van Siclen also solicited and retained Robert Galvin and Guy Hays, two former CoStar employees and salesmen of the Shopping Center Directory, to begin selling

Dockets.Justia.com

the Centers & Malls database. Mr. Van Siclen advised Mr. Galvin and Mr. Hays that the non-competition agreements they had executed with CoStar, which prohibited them from providing services to competitors for a period of one year, were unenforceable. Mr. Van Siclen admitted to the above facts at his deposition as Centers & Malls' 30(b)(6) corporate designee on June 1, 2007. In part as a result of the actions admitted to by Mr. Van Siclen at this deposition, CoStar amended its Complaint on July 16, 2007, to add Mr. Van Siclen as a named Defendant in this action. Mr. Van Siclen has filed the instant motion seeking dismissal of CoStar' First Amended Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, Mr. Van Siclen's Motion seeks dismissal of various counts against him pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted.

## II. ARGUMENT

### *A. Legal Standard for a Rule 12(b)(2) Motion to Dismiss*

When determining whether a court has authority to exercise personal jurisdiction over a non-resident defendant, "the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F. 3d 56, 60 (4th Cir. 1993).

#### 1. This Court may properly exercise personal jurisdiction over Mr. Van Siclen

"Maryland courts have concluded that the State's long-arm statute, Md.Code Ann., Courts & Jud. Proc. §6-103, expands Maryland's exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment." *ALS Scan, Inc. v. Digital Service*

*Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). "Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id* (internal citations omitted). "A non-resident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of [the Maryland long-arm statute]". *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 369 (D. Md. 1993). The Supreme Court has held that for a state to exercise personal jurisdiction over a non-resident defendant, the defendant must have certain minimum contacts with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(internal citations omitted).

Contrary to his assertions, Mr. Van Siclen regularly transacted business and contracted to supply goods and services within the State of Maryland. Preliminary discovery in this matter has revealed numerous instances of Mr. Van Siclen personally engaging in transactions directly with Maryland. On this point it is important to note that Centers & Malls is essentially the alter ego of Mr. Van Siclen. Mr. Van Siclen is the President and CEO of this business and, according to Mr. Van Siclen, the business has zero employees. *See* Van Siclen Deposition, p. 26:1-3, attached hereto as Exhibit 1. Since Centers & Malls' founding in 2006, Mr. Van Siclen has issued six "e-mail blasts," each sending marketing materials to over 30,000 potential customers chosen from the International Council of Shopping Center's ("ICSC's") membership lists. *See* Exhibit 1 to Plaintiffs' Reply to Motion for TRO, p. 129:1-130:19. Mr. Van Siclen also sent out a mass postal mailing to this same customer list when Centers & Malls was first formed. *See* Exhibit 4 to Plaintiffs' Reply to Motion for TRO, p. 111:5-13. The list of ICSC members located within

the State of Maryland is over 90 pages long. Also, Mr. Van Siclen places a monthly Centers & Malls advertisement in "Shopping Center Today," a publication of the International Council of Shopping Centers. This publication is sent to all ICSC members. *See* Exhibit 1 to Plaintiffs' Reply to Motion for TRO, p. 168:3-15. In fact, CoStar employees who are ICSC members have received this advertisement in Maryland. *See* Centers & Malls advertisement sent to CoStar employee, attached as Exhibit 10 to Plaintiffs' Reply to Motion for TRO. Further, Mr. Van Siclen sent a letter to the Mills Corporation in Chevy Chase, Maryland on January 8, 2007 requesting to enter into an agreement which would give him access to the Mills' Corporation's website. *See* January 8, 2007 letter, attached as Exhibit 11 to Plaintiffs' Reply to Motion for TRO. Mr. Van Siclen also advised Centers & Malls salesman Guy Hays to reduce his efforts in soliciting potential Maryland customers for Centers & Malls. *See* Exhibit 4 to Plaintiffs' Reply to Motion for TRO, p. 125:9-127:6. Thus, it is quite possible that Defendants would have solidified even more contacts with the State of Maryland but for their conscious efforts to evade jurisdiction in this matter. Finally, Mr. Van Siclen admitted at his deposition that he has contracted to have photographs taken of properties located in Maryland. *See* Exhibit 1 to Plaintiffs' Reply to Motion for TRO, p. 139:21-140:13. Therefore, by having photographs taken of Maryland properties, Centers & Malls contracted to have work performed within the State of Maryland. All of the above-listed contacts are directly attributable to Mr. Van Siclen as Centers & Malls' alter ego, and they are more than sufficient for this Court to exercise personal jurisdiction over Mr. Van Siclen pursuant to the Maryland long-arm statute.

With respect to due process, Judge Chasanow of this Court considered this exact issue of whether a court may exercise personal jurisdiction over the president of a corporate defendant in *CoStar Group, Inc. v. LoopNet*, 106 F. Supp. 2d 780 (D. Md. 2000). "With regard to jurisdiction

over corporate employees, the Supreme Court has made clear that the employee's contacts are not to be judged by the corporation's activities in the forum, rather the Court must look at the degree to which the employee personally participated in the alleged wrongdoing." *Id.* at 784, citing *Calder v. Jones*, 465 U.S. 783, 790 (1984). "We believe that the *Calder* "effects test" requires the plaintiff to show the following: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.... [I]n order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* citing *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

In the instant case, all three of these prongs have been satisfied. By taking the Shopping Center Directory without authorization and using it to create the Centers & Malls database, there can be no doubt that Mr. Van Siclen intentionally infringed upon CoStar's copyright. The CD-ROMs of the Shopping Center Directory clearly indicated that they were copyrighted. Further, Mr. Van Siclen knew that CoStar had acquired the rights to the Shopping Center Directory. *See* Centers & Malls' Response to Request for Admission No. 4, attached hereto as Exhibit 2. It is undisputed that CoStar is a Maryland-based company. Thus, by taking the Shopping Center Directory and using it to create a business venture that directly competed with CoStar, Mr. Van Siclen was expressly aiming his tortious activity at the State of Maryland.

Defendants have argued at previous times throughout this litigation that the Maryland Court of Appeals has rejected the above-cited "effects test" with its decision in *Bond v. Messerman*, 391 Md. 706, 895 A. 2d 990 (2006). This assertion is incorrect. As described above, the "effects test" is a doctrine developed by the United States Supreme Court in its decision in *Calder v. Jones*, 465 U.S. 783 (1984), analyzing the due process clause of the United States Constitution. Simply stated, the Maryland Court of Appeals cannot reject a Supreme Court interpretation of the Constitution. Even if this were possible, however, the Maryland Court of Appeals' decision in *Bond* does not stand for the proposition that Defendants are now espousing. First, the *Bond* decision was an analysis of personal jurisdiction under the due process clause: therefore it has no impact on the Maryland long-arm statute, as Defendants now contend. Further, the *Bond* Court merely stated that "we adopt the analysis of the Courts focusing on the defendant attorney's contacts with the forum state rather than those minority of courts relying on the site of the effect of the injury analysis." *Bond*, 391 Md. at 730. The effect of the injury analysis that was discussed in *Bond* is not the same as the "effects test," and this opinion cannot be seen as an express rejection of the "effects test" under the Maryland long-arm statute.

Finally, this Court may also exercise personal jurisdiction over Mr. Van Siclen under the conspiracy theory of jurisdiction recently upheld by the Maryland Court of Appeals in *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479 (2006). This theory states that "when two or more individuals conspire to do something that they could reasonably expect to lead to consequences in a particular forum, if one co-conspirator commits overt acts in furtherance of the conspiracy, and those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those

overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum." *Id.* at 128.

In the instant case, CoStar has alleged that Mr. Galvin, Mr. Hays, and Mr. Van Siclen conspired to disclose CoStar's confidential information in violation of Mr. Galvin's and Mr. Hays' employment agreements with CoStar. This Court has already determined that it can exercise personal jurisdiction over Galvin and Hays on the basis of their employment agreements with CoStar, whereby they consented to jurisdiction in the State of Maryland. Thus, the acts of Galvin and Hays in disclosing CoStar's confidential information to Centers & Malls are also attributable to Van Siclen as a co-conspirator. Since this Court can exercise jurisdiction over Galvin and Hays for the disclosure of this information, it can also assert jurisdiction over Van Siclen under the conspiracy theory of jurisdiction.

### *B. Legal Standard for a Rule 12(b)(6) Motion to Dismiss*[1]

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint; importantly a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Takacs v. Fiore*, 473 F. Supp. 2d. 647, 651 (D. Md. 2007), citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Courts will assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that

[1] It is important to note that the vast majority of Mr. Van Siclen's Rule 12(b)(6) Motion to Dismiss with respect to various of CoStar's individual counts was cut and pasted from Defendants Centers & Malls, Robert Galvin, and Guy Hays' May 31, 2007 Motion to Dismiss. The cut-and-pasted arguments--which state that CoStar's counts for copyright infringement and intentional interference with contractual relations fail to state a claim for which relief can be granted--have already been rejected by this Court.

the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir.2001); *see also Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 420 (4th Cir.2005).

### 1. Plaintiff's Copyright Infringement Count states a claim for which relief can be granted

To prove copyright infringement, a plaintiff must show first that it owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of the work. *Bouchat v. Baltimore Ravens, Inc.*, 241 F. 3d 350, 353 (4th Cir. 2001), citing *Towler v. Sayles,* 76 F.3d 579, 581 (4th Cir.1996) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). A Plaintiff's registration of a copyright, when "granted by the Copyright Office, is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation." *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986). In disputing the validity of a copyright, defendants "have the burden of overcoming the presumption arising out of the granting of the copyright by the Copyright Office." *Id.*

In the instant case, there is no dispute that National Research Bureau regularly copyrighted the database that is at issue in this litigation. *See* Copyright registration forms, attached to Plaintiffs' Reply to Motion for TRO as Exhibit 19. There is also no dispute that CoStar became the rightful owner of this copyright when it acquired National Research Bureau in January of 2005. Plaintiff has therefore already established a presumption that the Shopping Center Directory is a copyrightable and original work. In addition, Mr. Van Siclen admitted at his deposition that he took a CD-ROM copy of the Shopping Center Directory from his former employer, and used the information contained in this CD Rom as the foundation for the Centers & Malls database. *See* Exhibit 1 to Plaintiffs' Reply to Motion for TRO at p. 67:14-

72:12; 186:5-15. Plaintiff has therefore established a presumption that its database is copyrightable, and has conclusively established that this database was inappropriately copied by Garrett Van Siclen. These facts by themselves demonstrate that Plaintiff's Count for copyright infringement against Mr. Van Siclen states a claim for which relief can be granted.

Mr. Van Siclen's Motion to Dismiss argues that the Shopping Center Directory is not copyrightable because it lacks creativity or originality. Mr. Van Siclen's Motion places a great deal of emphasis on the Supreme Court's decision in *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 111 S.Ct. 1282 (1991). Mr. Van Siclen's reliance upon *Feist* to exonerate his misappropriation of the Shopping Center Directory is misplaced. In *Feist*, the Court held that a telephone directory that contained the names, addresses, and telephone numbers of subscribers in alphabetical order was not organized in an original or creative way, and therefore was not subject to copyright protection. As a result, the defendant's use was held not to infringe Plaintiff's copyright because only facts were copied. Despite this holding, it is clear that the Supreme Court intended its decision in *Feist* to be limited more or less to the facts of that case. For instance, the Court stated that

> [o]riginality requires only that the author make the selection or arrangement independently (i.e. without copying that selection or arrangement from another work), and that it display some **minimal level of creativity**. Presumably, the vast majority of compilations will pass this test, but not all will. There remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent.

*Id* at 358-59 (emphasis added). In other words, the Supreme Court in *Feist* held that while just about anything is copyrightable, a telephone directory simply listing the names, addresses, and telephone numbers of subscribers in alphabetical order is not. By contrast, the Shopping Center Directory certainly contains the requisite "minimum level of creativity" to make the compilation copyrightable.

A great deal of creativity has gone into the Shopping Center Directory. Each property listing on the Shopping Center Directory contains 29 fields of data that make up the property's description. *See* Affidavit of Andrew Florance, attached as Exhibit 21 to Plaintiffs' Reply to Motion for TRO. Many of these fields are non-factual and unique, including such categories as "Center Type," "Market Positioning," and "Center Shape." *Id.* The tenant listings and square footages for each of these listings are also unique, since these listings are dependent upon a decision by CoStar/NRB field researchers as to which buildings that make up a shopping center or mall will be included in a given listing based on "consumer experience." *Id.* For example, Plaintiffs' field researchers may decide that a free-standing restaurant within a given shopping center should not be included in a given listing due to "consumer experience." The "consumer experience" criteria for selection or exclusion is based upon a subjective analysis of how the consumer views a particular property. For example, a property listing in the directory might include a strip center and a separate, free-standing gas station owned by a different entity because the buildings share connecting parking lots. These decisions based on "consumer experience" necessarily shape the data in other fields, such as center square footage and tenant lists. *Id.*

The uniqueness of the fields within the Shopping Center Directory, their organization, and the decision of what fields to include in the database comprise more than enough of a "creative spark" to establish this database as copyrightable. Further, Mr. Van Siclen's Motion omits any reference to the fact that the CD-ROM version of the Shopping Center Directory (which is also copyrighted), contains a unique search function which allows its users to select among various fields and search for properties that match various criteria. The existence of this search function by itself demonstrates that the Shopping Center Directory possesses far in excess

of the minimum level of creativity required by the Supreme Court in *Feist* to support copyright protection.

The District Court of Maryland has interpreted *Feist* and found a compilation copyrightable under factual circumstances strikingly similar to the case at hand. In *Montgomery Cty. Assn. of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F.Supp. 804 (D. Md. 1995), Judge Legg found that a real estate database was copyrightable where it "contained marketing puffery that cannot be characterized as factual . . . [and] a unique and elaborate system of abbreviations in organizing its database." *Id.* at 810. In reaching this determination, the Court pointed out the fact that the listings on the Plaintiffs database "contain[] some purely factual information relating to the home (*e.g*. address, style, age, floor plan, asking price) does not negate the original presentation and arrangement of the information in the database." *Id.* Similar to the database in *Montgomery County Association of Realtors*, the Shopping Center Directory contains fields such as "Center Type" and "Market Positioning" which cannot be characterized as factual. Further, as described above, the Shopping Center Directory is organized in a unique and elaborate manner.

CoStar possesses a valid Copyright for the Shopping Center Directory. Mr. Van Siclen has admitted that he copied the Shopping Center Directory. This alone is enough to survive a Rule 12(b)(6) motion to dismiss. Further, Mr. Van Siclen's reliance on *Feist* is not enough to rebut the presumption that the Shopping Center Directory is copyrightable. The unique fields, arrangement, and search function of this database possess much more of the "minimum level of creativity" required to establish that a compilation is copyrightable.

### 2. CoStar's tortious interference with contractual relations count states a claim for which relief can be granted

Mr. Van Siclen's Motion to Dismiss next argues that CoStar's claim that Centers & Malls tortiously interfered with the employment agreements of Galvin and Hays should be dismissed.

Mr. Van Siclen's entire basis for this argument is that the Galvin and Hays employment agreements are unenforceable. Mr. Van Siclen is correct that the existence of a valid contract is a necessary element for establishing a claim for tortious interference with contractual relations. Despite this, the Court has already determined that the Galvin and Hays employment agreements are supported by adequate consideration and are not unreasonably overbroad for the reasons set forth below.

There is no dispute that Mr. Galvin and Mr. Hays executed employment agreements in connection with their employment with Plaintiff CoStar. *See* Employment Agreement of Robert Galvin, attached hereto as Exhibit 17 to Plaintiffs' Reply to Motion for TRO; *see also* Employment Agreement of Guy Hays, attached hereto as Exhibit 18 to Plaintiffs' Reply to Motion for TRO. By executing these agreements, Mr. Galvin and Mr. Hays expressly agreed that any proceeding arising out of an alleged breach of these agreements would be held in either the Circuit Court for Montgomery County or the United States District Court for the District of Maryland. *See id* at Paragraph 4.4. Mr. Van Siclen alleges that Mr. Galvin's and Mr. Hays' consent to jurisdiction within the State of Maryland is unenforceable because their employment agreements with CoStar lacked consideration. This contention is blatantly false.

First, the Galvin and Hays employment agreements with CoStar explicitly state: "Employee acknowledges and agrees that ***in consideration for entering into this Agreement*** Employee will come into contact with, have access to and learn various technical and non-technical trades secrets and other Confidential Information, which are the property of the Company." *Id* at Paragraph 2.5(a)(emphasis added). At their depositions, both Mr. Galvin and Mr. Hays conceded that they were exposed to confidential information while employed by CoStar. *See* Exhibit 3 to Plaintiffs' Reply to Motion for TRO at p. 123:8-125:14; *see also*

Exhibit 4 to Plaintiffs' Reply to Motion for TRO at p. 17:20-19:7. Thus, there is no dispute that by their very terms, the Galvin and Hays employment agreements were supported by consideration thereby making them enforceable. As a result, Mr. Galvin and Mr. Hays' contractual consent to jurisdiction in the United States District Court for the District of Maryland should be upheld by this Court.

Even if the Court were to find that Galvin's and Hays' access to CoStar's confidential information did not provide ample consideration, the agreements were supported by additional consideration in the form of employment with CoStar. At their depositions, both Mr. Galvin and Mr. Hays stated that they would not have been permitted to work with CoStar had they refused to execute these employment agreements. *See* Exhibit 3 to Plaintiffs' Reply to Motion for TRO at p. 129:5-14; *see also* Exhibit 4 to Plaintiffs' Reply to Motion for TRO at p. 29:8-11. Defendants have argued that Galvin's and Hays' employment with CoStar is excluded as consideration based on the parol evidence rule. This argument however, is based on a misapplication of this rule. In Maryland, parol or extrinsic evidence "is inadmissible to vary, alter or contradict a writing which is complete and unambiguous, where no fraud, accident or mistake is claimed." *Pumphrey v. Kehoe*, 261 Md. 496, 504, 276 A.2d 194, 199 (1971)(internal citations omitted). In the instant case, CoStar is not attempting to introduce evidence of consideration to vary, alter, or contradict the terms of the Galvin and Hays employment agreements. Instead, CoStar is introducing this evidence to establish the valid formation of a contract. Evidence used to establish the formation of a contract is not parol evidence. *See, e.g. Catholic University of America v. Bragunier Masonry Contractors, Inc.*, 139 Md. App. 277, 300, 775 A.2d 458, 472 (2001)(evidence is not "parol evidence" if not being offered to vary the terms of an integrated writing).

Thus, the express terms of the Galvin and Hays employment agreements with CoStar provide for consideration in the form of exposure to confidential information. Galvin and Hays do not dispute that they were exposed to confidential information during their employment with CoStar. *See* Exhibit 3 to Plaintiffs' Reply to Motion for TRO at p. 123:8-125:14; *see also* Exhibit 4 to Plaintiff's Reply to Motion for TRO at p. 17:20-19:7. Further, Galvin and Hays were both provided additional consideration for their employment agreements in the form of employment with CoStar. On top of this, Galvin was provided with even more consideration upon the termination of his employment with CoStar, by being given over $30,000 in severance. *See* Exhibit 2 to Plaintiffs' Reply to Motion for TRO. For all of these reasons, the Galvin and Hays employment agreements with CoStar were supported by consideration.

Mr. Van Siclen also argues that the Galvin and Hays employment agreements with CoStar are unenforceable because the non-competition provisions of these agreements are overbroad. In Maryland, courts will uphold non-competition provisions in employment agreements "if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." *Ruhl v. F.A. Bartlett Tree Expert Co.*, 245 Md. 118, 123-24, 225 A.2d 288, 291 (1967)(citing *MacIntosh v. Brunswick Corp.*, 241 Md. 24, 31, 215 A.2d 222, 225 (1965)). Maryland courts will initially look to whether a non-competition provision is facially overbroad. If the provision is not overbroad on its face, the court will examine the facts and circumstances of each case. *Millward v. Gerstung International Sport Education, Inc.*, 268 Md. 483, 488, 302 A.2d 14, 16 (1973). In the instant case, the non-competition provisions of the Galvin and Hays employment agreements are not facially overbroad. Instead they are specifically limited in duration, geographic scope,

and breadth of restricted activities so that these restrictions are no greater than necessary to protect CoStar's legitimate business interests. In fact, to avoid the possibility that this non-competition provision be construed as overly restrictive, the agreements provide that the provision can be waived by consent of CoStar's Chief Executive Officer. *See* Exhibits 17 and 18 to Plaintiffs' Reply to Motion for TRO at paragraph 2.5(c).

The non-competition provision of CoStar's employment agreements with Mr. Galvin and Mr. Hays prohibit Galvin and Hays, for a period of one year following the date of their termination, from employment, ownership, or association with a company "engaged in the provision of real estate information or software". *Id*. In recognition of the nationwide and international scope of CoStar's business, the restrictions are applicable in the United States, Canada, and the United Kingdom. *Id.*

With respect to duration, the non-competition provision of Galvin and Hays' agreements expire one year after the termination of their employment with CoStar. There can be no dispute that a one-year restriction on competition is reasonable under Maryland law. Maryland courts have often found that agreements that prohibit an employee from competing with a former employer for a period of greater than one year following termination to be a reasonable restraint on trade. *Holloway v. Faw, Casson & Co.*, 319 Md. 324, 572 A.2d 510, 515 (1990)(upholding a five year restrictive covenant after having judicially modified it down to a three year non-competition prohibition); *see also Griffen v. Guy*, 172 Md. 510, 192 A. 359 (1937)(restrictive covenant between barbers upheld although unlimited as to time); *Anderson v. Truitt*, 158 Md. 193, 148 A. 223 (1930)(non-competition covenant for furniture salesman with twenty-five year restriction found reasonable). Thus, if Maryland courts are willing to find the above restraints on

employment to be reasonable, there is no doubt that CoStar's one-year restriction as to Galvin and Hays is reasonable under the present circumstances.

Maryland law does not require a non-competition provision to contain a geographic limitation to be considered reasonable. *Deutsche Post Global Mail, Ltd. v. Conrad.*, 292 F. Supp. 2d 748, 756 (D. Md. 2003)(finding that if a restriction is to legitimately prevent competition, it stands even where there is no geographic limitation). Where there is a geographic limitation provision in a non-competition provision, Maryland courts will uphold the provision where there is a logical nexus between the location of the employer's business activity and the restrictive geographic area. *Becker v. Bailey*, 268 Md. 93, 299 A. 2d 835 (1973)(covenant not to compete enforceable if restraint confined within limits which are no wider as to area than are reasonably necessary to protection of business of employer).

In this case, CoStar has restricted Galvin's and Hays' activities as narrowly as possible to include only geographic areas where CoStar conducts business. CoStar's business activities extend across the United States and also include Canada and the United Kingdom. As a result, the restrictions in Galvin's and Hays' employment agreements include these areas. There is a logical nexus between the location of CoStar's business activities and the restricted geographic area, and the restraint is confined within limits that are no wider than reasonably necessary to protect CoStar's legitimate business interests. Given that Maryland courts have found non-competition provisions to be reasonable even without any limitation as to geographic scope, the limitation of the restriction in the present case to only areas where CoStar conducts business is entirely reasonable.

With respect to the breadth of the activities restrained, the CoStar non-competition provision prohibits Galvin and Hays from working for businesses "engaged in the provision of

commercial real estate information or software." This restriction is closely tied to the work that Galvin and Hays had been performing for CoStar, and does not seek to bar Galvin's and Hays' employment in the broad commercial real estate industry in which they were working. In fact, by signing their agreements, Mr. Galvin and Mr. Hays both expressly agreed that:

> Employee's experience and capabilities are such that Employee can obtain employment with a new employer engaged in a different business or services different from that conducted by the Company, and the entry of an injunction to enforce the duty of non-competition set forth herein shall not prevent employee from earning a livelihood.

Exhibits 17 and 18 to Plaintiffs' Reply to Motion for TRO, paragraph 2.5(d).

Maryland courts must construe contracts to effectuate the reasonable intentions of the parties. *Imas Gruner & Associates, Ltd. v. Stringer*, 48 Md. App. 364, 367, 427 A.2d 1038, 1040 (1981). Maryland courts do not interpret contracts in a manner that would render provisions superfluous or having no effect. *Towson University v. Conte*, 384 Md. 68, 81, 862 A.2d 941, 948 (2004). There are two key clauses of the non-competition provisions in the Galvin and Hays agreements that must also be considered. First, both Galvin and Hays acknowledged that "the Company is engaged in a highly competitive business and . . . engaging in any business which is directly or indirectly competitive with the Company will cause it great and irreparable harm." Exhibits 17 and 18 to Plaintiffs' Reply to Motion for TRO, paragraph 2.5(b). Also, Paragraph 2.5(c) of the Galvin and Hays employment agreements specifically lists businesses engaged in the provision of commercial real estate information or software that Galvin and Hays were prohibited from working with. These businesses included but were not limited to: "Loopnet, Inc., Exceligent, Black's Guide, Dorey Publishing, Commercial Search, Cityfleet, Octane Ventures, Officespace.com, Marshall & Swift, Yale Robbins, and REIS." *Id.* Centers & Malls doubtless would have also been included on this list; however, the company was not in existence

at the time that these agreements were executed. When the Galvin and Hays agreements are construed as a whole, there is no doubt that the parties' intent was to prohibit Galvin and Hays from working with companies that engage in the same limited type of business as CoStar. This is an entirely reasonable restriction as to the breadth of Galvin and Hays' activities.

Since the non-competition provisions of the Galvin and Hays employment agreements are reasonably limited as to duration, geographic scope, and breadth of activity, these provisions are not facially overbroad. The Court must therefore examine the facts and circumstances of this particular case. Galvin and Hays did not go to work for *The Washington Post*, or Google, or Microsoft. Instead, Galvin and Hays became senior executives with Centers & Malls: a company engaged in the exact same type of business as CoStar.[2] The non-competition provision of the Galvin and Hays employment agreements allow Galvin and Hays numerous opportunities within the extremely broad real estate industry. Despite this, Galvin and Hays specifically chose to work for a direct competitor of CoStar. For all of these reasons, the Galvin and Hays agreements with CoStar are enforceable, and Plaintiff's Count for tortious interference with contractual relations states a claim for which relief can be granted.

**3. CoStar's claim for violation of the Maryland Uniform Trade Secrets Act states a claim for which relief can be granted**

Mr. Van Siclen's Motion to Dismiss also alleges that CoStar's Count for violation of the Maryland Uniform Trade Secrets Act fails to state a claim for which relief can be granted. In making this argument, the Motion claims that CoStar's database does not meet the definition of a trade secret under the statute, because CoStar's Complaint states that the database consists partially of "publicly available information." The fact that portions of CoStar's database consist

[2] In fact, at his deposition, Mr. Galvin testified that he is currently performing services for Centers & Malls under a contract with a non-competition provision. *See* Exhibit 3 to Plaintiffs' Reply to Motion for TRO at p. 91:15-93:6. Before being instructed not to answer further questions by his counsel, Mr. Galvin explained that the Centers & Malls non-competition provision specifically prohibits him from performing working for CoStar. *Id.*

of publicly available information is irrelevant. Mr. Van Siclen's Motion willfully ignores the allegation in CoStar's First Amended Complaint that its database is "part proprietary works . . . which have been prepared through substantial and prolonged efforts at market research, data verification, and unique arrangements of data into searchable and organized formats for use by the CoStar licensees." *See* First Amended Complaint, ¶83. To qualify as a trade secret, the statute requires that a compilation:

> 1) Derive[] independent economic value, actual or potential from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> 2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code Ann. §11-1201(e).

There is nothing within this definition that disqualifies a compilation as a trade secret for containing partially public information, and Mr. Van Siclen's Motion cites no case law to support such a proposition. As such, the CoStar database clearly falls within the definition of a trade secret.

In addition to the above, Mr. Van Siclen's Motion claims that CoStar's First Amended Complaint cites to unspecified "proprietary information" as trade secrets, and that the Complaint does not allege that this unspecified proprietary information falls within the statutory definition of a trade secret. To begin with, Paragraph 84 of CoStar's First Amended Complaint specifically states that this proprietary information includes but is not limited to "customer lists for the Shopping Center Directory, pricing information for the product, and overall business strategies." Thus, Mr. Van Siclen's claim that CoStar has not specified the proprietary information that has been misappropriated is without merit. In addition, Paragraph 85 of the First Amended Complaint states: "CoStar has taken extensive steps to maintain the secrecy and proprietary

nature of the source of its database <u>*and proprietary information*</u> so that it is not generally available to the public." (Emphasis added). The paragraph goes on to state several steps that CoStar has taken to protect this information, including requiring its employees to execute confidentiality agreements. Paragraph 87 alleges that Van Siclen has used the proprietary information of CoStar, including without limitation the customer list for the Shopping Center Directory." Therefore, CoStar's allegations in its First Amended Complaint are clearly sufficient to place its proprietary information within the statutory definition of a trade secret. For all of these reasons, Mr. Van Siclen's Motion to Dismiss Count V of CoStar's First Amended Complaint should be denied.

#### 4. CoStar's conversion count states a claim for which relief can be granted

Mr. Van Siclen's Motion to Dismiss next argues that Plaintiffs' count for conversion fails to state a claim for which relief can be granted. CoStar does not contest Mr. Van Siclen's assertion that under Maryland law, "a conversion occurs at such time as a person is deprived of property which he is entitled to possess." *See* Motion to Dismiss, p. 14, citing *Baltimore & Ohio R.R. Co. v. Equitable Bank, N.A.*, 77 Md. App. 320, 325, 550 A.2d 407 (1988). Mr. Van Siclen, however, inexplicably argues that CoStar does not allege in its conversion count that it has been deprived of property to which it is entitled to possess. *See* Motion to Dismiss, p. 14. Paragraph 91 of CoStar's First Amended Complaint expressly states "In late 2005, Van Siclen took a CD-ROM containing the CoStar database from its former employer without authorization. The CD-ROM taken by Van Siclen was a physical object embodying National Research Bureau's work, the rights of which had been acquired by CoStar." Since CoStar has clearly pled that Van Siclen's actions deprived them of the use of property that they were entitled to possess, its cause of action for conversion states a claim for which relief may be granted.

Mr. Van Siclen also argues that Plaintiffs' conversion count is preempted by the copyright act. "It is hornbook law that a 'state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work.'" *U.S. ex rel. Berge v. Board of Trustees of the Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997). Preliminary discovery in the instant action has established that Mr. Van Siclen unlawfully retained a CD-ROM of the Shopping Center Directory: "the physical object embodying plaintiff's work." Since CoStar can now establish this extra element, its conversion count is not preempted by federal copyright law.

Mr. Van Siclen's Motion finally argues that CoStar's conversion claim is preempted by the Maryland Uniform Trade Secrets Act. In making this argument, Mr. Van Siclen ignores the express language of the statute, which provides: (b)(1) This subtitle does not affect: (ii) other civil remedies that are not based upon misappropriation of a trade secret;" Md. Code. Ann., § 11-1207. The tort of conversion is not based upon the misappropriation of a trade secret. As was stated above, conversion is based upon a Plaintiff being deprived of physical property that it is entitled to possess. Since CoStar has alleged that it was deprived of a physical object that it owned--the CD-ROM containing the Shopping Center Director--the preemption provision of the Maryland Uniform Trade Secret Act is not applicable. Moreover, it is disingenuous for Mr. Van Siclen to argue in his Motion that this preemption provision applies, when he has already taken the position earlier in the motion that the database that he allegedly converted did not constitute a trade secret. For all of these reasons, Mr. Van Siclen's Motion to Dismiss with respect to CoStar's conversion count should be denied.

### 5. CoStar's civil conspiracy count states a claim for which relief can be granted

Mr. Van Siclen's Motion to Dismiss next argues that CoStar's count for civil conspiracy fails to state a claim for which relief can be granted because a corporation or other legal entity cannot conspire with its own employees and/or agents. The Motion goes on to state "it is impossible for a corporation or other legal entity to conspire with its employees and/or agents who are acting within the scope of their agency/authority." Assuming *arguendo* that this contention is true, it is irrelevant. CoStar is alleging that Van Siclen, Galvin, and Hays conspired with each other. There is no allegation in the First Amended Complaint of any conspiracy between individuals and a corporation or other legal entity. Further, the First Amended Complaint clearly alleges that the conspiracy took place while Galvin and Hays were still employed by CoStar. Thus, even if Van Siclen's actions can be attributed to Centers & Malls through the laws of agency, CoStar is not alleging that Centers & Malls conspired with its own employees. Rather, the allegation is that Van Siclen/Centers & Malls was conspiring with CoStar employees. For all of these reasons, CoStar's civil conspiracy count against Mr. Van Siclen is sufficiently pled, and should not be dismissed.

### 6. Violation of 18 U.S.C. § 1030

CoStar will agree to voluntarily dismiss its Count for violation of 18 U.S.C. § 1030 as to Mr. Van Siclen. However, should discovery in this matter reveal additional facts that would support such a cause of action as to Mr. Van Siclen, CoStar reserves the right to amend its Complaint to again raise this cause of action.

## III. CONCLUSION

For all of the foregoing reasons, Mr. Van Siclen's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

CARR MALONEY P.C.

By:______________________________
Thomas L. McCally, Esquire
Kevin M. Murphy, Esquire
Nat P. Calamis, Esquire
1615 L Street, NW, Suite 500
Washington, DC 20036
(202) 310-5500/(202) 310-5500
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st day of September, 2007, a copy of the foregoing was electronically mailed and sent via first class mail to:

Walter E. Diercks, Esq.
Jeffrey Harris, Esq.
Rubin, Winston, Diercks, Harris & Cooke LLP
1155 Connecticut Avenue, NW, 6th Floor
Washington, DC 20036

Neal M. Janey, Esq.
928 North Charles Street, A-2
Baltimore, MD 21201

______________________________
Thomas L. McCally